ROBERT D. ABNEY and BONNIE L. ABNEY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Abney v. Commissioner
Docket. No. 7804-78.
United States Tax Court
T.C. Memo 1980-27; 1980 Tax Ct. Memo LEXIS 561; 39 T.C.M. (CCH) 965; T.C.M. (RIA) 80027; January 28, 1980
Lloyd Taylor, for the petitioners. Joyce Elaine Britt , for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined a deficiency in petitioners' income tax for the calendar year 1974 is the amount of $12,501 and an addition to tax under section 6653(a), I.R.C. 1954, [1] in the amount of $625. Some of the issues raised by the pleadings have been disposed of by the parties, leaving for our decision only whether petitioners are entitled to a deduction under section 170 in the amount of $26,488 or any part thereof. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Robert D. and Bonnie L. Abney, husband and wife, who resided in San Mateo, California at the time of the filing of their petition in this case, filed their joint Federal income tax return for the calendar year 1974 with the Internal Revenue Service Center, Fresno, California. During the calendar year 1974, Robert D. Abney was employed as a pilot *563 by Pan American World Airways, Inc., and Bonnie L. Abney was also employed by Pan American World Airways, Inc. during the calendar year 1974. Some time in 1974, petitoner Robert Abney read in the news media about Rev. Kirby J. Hensley and the Universal Life Church, Inc. He also saw something about the Universal Life Church on a news program and became interested in it. The first of the articles petitioner read was an article about the Universal Life Church winning a case in which it claimed to be a legitimate tax exempt church under the provisions of the Internal Revenue Code. Petitioner contacted a friend of his to find out how to get in touch with Rev. Hensley. Petitioner wrote to Rev. Hensley to inquire how to become a member of the Universal Life Church. He received some information and wrote to the Universal Life Church requesting that he become a member. He received documents headed "Universal Life Church, Inc., Headquarters: 601 Third Street, Modesto, California 95351 * * * Credentials of Minister." The form had printed thereon: This is to certify that the bearer hereof     of     State or Province of     has been ordained by Universal Life Church, Inc. this *564 day     19  . Board Members Rev. Susetta Lykins Rev. Paumer J. Torgerson Bishop Robert E. Imbeau Lida G. Hensley, Secretary /s/ Kirby J. Hensley / President--Kirby J. Hensley, D.D. The document had thereon a circle that carried the name "Universal Life Church, Incorporated, Modesto, California," and the word "SEAL." The blanks on one of these forms was filled in to bear the name "ROBERT D. ABNEY" of "SAN MATEO," "CALIFORNIA" and the date "Dec. 12, 1974," by typewriter, and a similar document bearing the name "BONNIE ABNEY" with the same address and date was filled in. With the documents received by petitioners came a mimeographed one-page statement headed "Universal Life Church, Inc. Information." This statement read in part: Congradulations on becoming a ULC minister. Enclosed is your pocket size credentials. Please fill it out. This is your license and ordination paper. One can perform the same services with this license that a minister of any church can perform, i.e. wedding ceremonies, funerals, baptisms, etc. You, as a ULC minister, can ordain other ministers by simply sending us their names and addresses. We will register them and send them their credentials, *565 or, for a $1.00 free-will offering you can obtain 10 pocket-sized credentials and ordain them yourself. Please be sure to send their names and addresses and zipcodes for recording. We also have a large 8-1/2 X 11 credential, suitable for framing and available for a free-will offering to help with expenses. There is a $1.00 offering for replacement of a license. The ULC has no traditional doctrine. It only believes in that which is right. We believe that everyone has a right to his own conviction and a right to express it. We recognize everyone's belief. The ULC is a legal organization. It is incorporated in California and filed in many other states, soon to be filed in all states. We will ordain anyone without question of their faith, for life, for a free-will offering. There are now over 3,000,000 ministers and over 10,000 churches under ULC. These ministers and churches are in most of the Free World. * * *
We will furnish you with a branch charter and tax exempt status providing you send an offering of $2.00 a month for record keeping, and make a quarterly report on attendance, offerings and expenses to headquarters. We will furnish you a tax exempt *566 status with the federal government. * * *
Would you like to have a Doctor of Divinity degree? You may receive an Honorary Doctor of Divinity Degree for an offering of only $20.00 from Universal Life Church headquarters in Modesto. The Federal Court has ruled that this honorary degree is legal. After receiving this information brochure, petitioner filled in a form which had "CHARTER NO.," "Date," a blank line under which were the words "Name of Church," a blank line following the word "of" under which appeared "Street" and "City" and "State." Three Typewritten paragraphs stated as follows: 1. This church agrees to abide by the Corporate Laws of the State and if it ceases to be active all properties, money, and records it has reverts to International Headquarters. 2. That this church will report quarterly the services held, including special meetings, attendance, income disbursements and balance. A record keeping fee of $2.00 (two dollars) per month will be required with the report. 3. This church must have a governing body of at least three people, pastor, secretary and treasurer. This agreement must be signed by the three, individually. To notify headquarters *567 immediately of any change of these officers. In the space marked "Date" the handwritten date "January 1975" was erased and over the erasure was typed "DECEMBER 15, 1974." Next to "Pastor" appeared "Robert D. Abney" and next to "Secretary" appeared "Bonnie L. Abney." [2] Paragraph 5, which was below the spaces for the signatures of the pastor and secretary, states: 5. If this church abides by the above laws and rules, we, at Church Headquarters, agree to furnish you with a non-profit tax status. Corporate number of State 432091. Also the Federal tax exempt status with the Internal Revenue Service. Below paragraph 5 was a line which bore the signature "Kirby J. Hensley," below which was typed "Rev. Kirby J. Hensley, President." Below this signature appeared: Please refer to your charter number when making your reports or writing about your church. Please retain one copy of this agreement for your files. Send all correspondance to Universal Life Church, Inc., 601 Third Street, Modesto, CA 95351 *568 USA
Some time after submitting the above document to the Universal Life Church, petitioners received a document which bore the title "Universal Life Church, Inc., Headquarters: 601 Third Street, Modesto, California 95351 * * * CHARTER." Printed below the word "CHARTER" was-- This is to certify that     of     State or Province of     has been granted by Universal Life Church, Inc., Modesto. This day This document had printed as board members the same persons as the document entitled "Credentials of Minister" and was signed by Kirby J. Hensley and bore the same type of seal as the Credentials of Minister. In the righthand was printed "No.    " and the document has typed in the blank "10,670." In the blank under which were the words "Name of Church" the name "DIGNITY OF MAN CHURCH" was typed and in the blanks for city and state were typed "SAN MATEO" and "CALIFORNIA." Under the blank for the date was typed "DECEMBER 15, 1974." The number 10,670 had been placed in handwriting on the application document sent in by petitioners to the Universal Life Church next to the typed words "CHARTER NO." On that document, under the blank line above the statement "Name of Church" *569 had been typed "DIGNITY OF MAN CHURCH" and the address had been typed as "837 N. Humboldt, San Mateo, California." The document entitled "Universal Life Church, Inc. * * * CHARTER" was received by petitioners some time in late December 1974 or early January 1975. At the time petitioner sent in the document which caused him to be sent the document entitled "Universal Life Church, Inc. * * * CHARTER," he sent a check for $25 made out to the Universal Life Church. Some time after receiving the document entitled "CHARTER," petitioner opened a bank account in the name "Dignity of Man Church." On February 26, 1975, petitioner received a letter from the bank welcoming the new account opened in the name of "Dignity of Man Church." At the time this account was opened, petitioner transferred the funds from his personal checking account to the account in the name of "Dignity of Man Church." Petitioners Robert D. Abney and Bonnie L. Abney and the brother of petitioner Robert D. Abney were the only individuals entitled to draw checks on the account in the name of "Dignity of Man Church." Some time subsequent to the year here in issue, petitioner, who was still a pilot for Pan American Airways, *570 Inc., requested Pan American Airways to deposit the compensation to which he was entitled for flying directly to the account in the name of "Dignity of Man Church." Pan American Airways honored the request and made the deposits of petitioner's compensation for flying to the account in the name of "Dignity of Man Church." In 1974, petitioner had registered in his name a Mercedes-Benz automobile for which he had paid $7,500. On April 3, 1975, petitioner changed the registration of this automobile from his name to the name of "Dignity of Man Church, 837 N. Humboldt, San Mateo, California 94001." Since April 3, 1975, the Mercedes-Benz has remained registered in the name of "Dignity of Man Church" at the address indicated. Also, some time in 1975 a 1966 Chevrolet for which petitioners had paid $2,500, which was registered in Bonnie L. Abney's name, was transferred to the name of "Dignity of Man Church." Some time after February 1975, petitioners Robert D. Abney and Bonnie L. Abney each signed a document entitled "Gift of All to Universal Life Church, Dignity of Man Chapter." Each of these forms, which were dated December 15, 1974, and were the same except for the signator, read in *571 part: This form in a Declaration of the gift to the Church/Order here named of All possessions of All sorts NOW owned and HEREAFTER acquired to be administered by the giver in his capacity of religious hierarchy under the "Corporation Sole/Several" powers legally recognized for religious leaderships. I, Robert Dale Abney [Bonnie MacLean Abney], of the City of SAN MATEO County of SAN MATEO, State/Province of CALIFORNIA, hereby make irrevocable gift of all of my possessions to the Church/Order here named UNIVERSAL LIFE CHURCH, DIGNITY OF MAN CHAPTER of which I am an official and Minister duly ordained, thus divesting myself as a person of all of my possessions and income whatsoever, all such possessions and income here and hereafter being the property of the Church/Order regardless of whether or not they continue to appear in my personal name. Even outside employment (when directed by the Church/Order) income is not personal income and is not subject to withholding for taxes of any kind including social security (unless so elected) but rather is income of the Chuech/Order and not of the individual. I, Robert Dale Abney [Bonnie MacLean Abney *572 ], do hereby take the Vow of Poverty. While this initial gift and the succeeding gifts here provided for are irrevocable, thus complying with irrevocable-gift tax-exempt status, they will revert to the giver instead of continuing in perpetuity if secular officialdom were to void this document as by invalidating my right to continue as sacerdotal official of the Church/Order, or by impeding my power to designate afterdeath succession to religious hierarchy, or by blocking the tax-free complete maintenance of Church/Order hierarchy and officials and the dispensation of gifts by this Church/Order, or by blocking powers to partition Church/Order possessions in whatever way determined upon as in setting up other Church/Orders anywhere in the Universe, or by interfering in any way with freedom from taxes and with the enjoyment of other benefits and rights now accorded to churches and orders and thus by fundamental law as rightfully accorded our Church/Order as fully under the Constitution of the United States of America. Petitioners have continued from 1974 through the time of the trial of this case to reside at 837 N. Humboldt Street, San Mateo, California. Petitioners Robert D. Abney *573 and Bonnie L. Abney have continued to drive the Mercedes-Benz and the Chevrolet cars registered in 1975 in the name of "Dignity of Man Church." All the personal expenses for food, clothing and transportation and other items of petitioners have been paid by checks drawn from the bank account in the name of "Dignity of Man Church." Petitioners have continued to use the furniture located in the house at 837 N. Humboldt Street and to wear the clothes which they have at the house at 837 N. Humboldt Street. In 1974, petitioner Bonnie L. Abney owned a house in Seattle, Washington which had cost $18,800. This house continued to be held in the name of Bonnie L. Abney until it was sold some time in 1978 and at the time of sale a deed to the property was given to the purchasers by Bonnie L. Abney. During 1974 and for some time prior thereto, petitioner had been operating a tennis shop. Some time in late December 1974 or early January 1975 the inventory in the tennis shop and equipment used for operating the shop were moved from the shop to the house at 837 N. Humboldt Street, San Mateo, California. In 1977 most of the equipment and inventory which had been moved from the tennis shop was *574 given to the Boys' Club. The tennis shop had not been a success for petitioner and he had lost money, in its operation. The Universal Life Church, Inc., Modesta, California, is a corporation which had been recognized by respondent in his Publication 78 as an organization, contributions to which are deductible under section 170. The Dignity of Man Church has never submitted an application for tax exempt status to the Internal Revenue Serivce and no listing under Dignity of Man Church is carried in any publication of respondent as an organization exempt from tax, contributions to which are deductible. Petitioners in their Federal income tax return for the calendar year 1974 claimed total contribution deductions of $21,558, explaining: "Contributions have been limited." Above this explanation appeared the following on a schedule attached to their 1974 return: CONTRIBUTIONS
21 A- Cash contribution for which you have receipts
95.
B- Other cas contributions-
22 Other than cash contributions-
Dignity of Man Church
26488.
23 Carryover from prior years
0.
In addition to the claimed contributions, petitioners claimed deductions for such items as alimony, *575 union dues, uniforms and work clothes, tax audit expenses, tax return preparation fee and interest expenses, with the following summary of itemized deductions: 35 Total medical and dental expenses - line 10
0.
36 Total taxes - line 17
2717.
37 Total interest expense - line 20
1417.
38 Total contributions - line 24
21558.
39 Casualty (Losses) - line 29
0.
40 Total miscellaneous - line 34
2104.
41 Total deductions (lines 35 through 40)
27796.
When a Revenue agent called on petitioners in connection with a proposed audit of their return, petitioners refused to show the Revenue agent any records in support of any items claimed as deductions on their return. Petitioners at a later date, after the sending of the deficiency notice and the beginning of the trial of this case, did show some of their records to representatives of the Interal Revenue Service. Respondent in his notice of deficiency disallowed petitioners' itemized deductions of $27,796 with the following explanation: You have failed to establish that you are entitled to itemized deductions as claimed on your tax return for 1974, either in full or in part, due to the lack of substantiation of *576 payment or that they were incurred. Thus the total amount claimed as itemized deductions, $27,796.00, is disallowed and in lieu thereof you have been allowed the maximum standard deduction for married persons filing jointly, in the amount of $2,000.00. The net adjustment to your taxable income is $25,796.00, which represents the difference between the amount disallowed and the amount allowed. [3]
*577 OPINION Petitioners take the position that they contributed in 1974 their household furniture, automobiles, clothing, personal bank account and tennis shop inventory and equipment to the Universal Life Church, Inc. The basis for their contention is that the Dignity of Man Church is a branch of the Universal Life Church and by making a contribution to the Dignity of Man Church they in effect made a contribution to the Universal Life Church, which is recognized by respondent as a tax exempt organization, contributions to which are deductible under section 170. Respondent takes the position that petitioners have not shown the making of any contribution at any time to the Universal Life Church, but merely some transfers of automobiles and a bank account into the name "Dignity of Man Church" with petitioners keeping complete control over the items transferred. Respondent further contends that petitioners have totally failed to show that any purported transfers of any property were made by petitioner to the Dignity of Man Church in the year 1974. This record is absolutely clear that the registration of the two automobiles in the name of "Dignity of Man Church" did not occur in *578 1974 but rather occurred in 1975. The record is also clear that the documents dated December 15, 1974, which were signed by petitioners and entitled "Gift of All to Universal Life Church, Dignity of Man Church" were not signed until some time after February 1975. Petitioners' argument in this regard is that they discussed with each other and agreed that they would take a vow of poverty either in late 1974 or early 1975 when they received the document entitled "Universal Life Church, Inc. * * * CHARTER" listing under "Name of Church" the "Dignity of Man Church." They contend that at the time of receipt of this document they agreed to transfer all their possessions to the Dignity of Man Church. However, the record is not clear whether petitioners actually received the document entitled "Universal Life Church, Inc. * * * CHARTER" in 1974 or January 1975. The indication from the erasure of the handwritten January 1975 on the application sent by petitioners and Mr. Abney's brother to the Universal Life Church is that the document entitled "CHARTER" was not actually received by petitioners until some time in 1975, even though it is dated December 15, 1974. Mr. Abney testified that the *579 application for the "CHARTER" was not made until after he and Mrs. Abney received the documents entitled "Universal Life Church, Inc., Credentials of Minister." Each of these documents bears a date of December 12, 1974, but there is no showing in the record of when they were actually received by petitioners. However, the record does show that those documents were accompanied by a sheet entitled "Universal Life Church, Inc. Information" which suggested that petitioners would be furnished with a "branch charter" if they sent an offering of $2 a month for recordkeeping. In his testimony petitioner stated that he was unsure of when the document entitled "CHARTER" was received. This record totally fails to show that any transfer of any property was made by petitioners into the name of the Dignity of Man Church during the taxable year 1974, the year here in issue. [4] Petitioners never made any transfer of money or property into the name "Universal Life Church, Inc." except for the $25 they sent with their "application" for a "Charter" for the Dignity of Man Church. The record does not show when this $25 check was sent. *580 Section 170(a) provides for the allowance of a deduction for a charitable contribution as defined in section 170(c), "payment of which is made within the taxable year." [5]
*581 Petitioners have failed to show that they made any transfer of money or property into the name of either the "Dignity of Man Church" or the "Universal Life Church, Inc." in 1974. Therefore, petitioners made no "payment" of any amount to either the "Dignity of Man Church" or the "Universal Life Church, Inc." in 1974, and for this reason alone respondent's disallowance of the claimed deduction for contribution to the "Dignity of Man Church" is sustained. Section 170 also requires that for a contribution to be deductible as a charitable contribution it be made to or for the use of an organization that meets the criteria set forth in section 170(c)(2). Respondent apparently concedes that the Universal Life Church, Inc. is such an organization. However, the record in this case shows that except for a $25 check, all transfers made by petitioners which they claim constitute charitable contributions were made in the name of the Dignity of Man Church. The record shows that petitioners had complete control over the back account in the name of "Dignity of Man Church," and that they had full use of the automobiles transferred to the name of the Dignity of Man Church. For this reason no *582 "gift" of these items to or for the use of the Universal Life Church was made. This record shows that petitioners used entirely for their own benefit any moneys or other items which were transferred to the name of the Dignity of Man Church. We conclude, on the basis of this record, that petitioners have failed to show a gift at any time to the Universal Life Church, Inc. of the items which they are claiming to be deductible contributions to the Universal Life Church, Inc. in 1974. This record shows that the Dignity of Man Church, considered apart from the Universal Life Church, Inc., does not meet the section 170(c)(2)(C) reguirement that "no part of the net earnings" of the organization inure to the benefit of any individual. Not only did petitioners use the money and property they claimed they transferred to the Dignity of Man Church but also the document they signed entitled "Gift of All to the Universal Life Church, Dignity of Man Chapter," which petitioners contend is the written evidence of their "charitable contribution," specifically provides for the reversion of the "gifts" to petitioners under certain circumstances. This fact alone is sufficient to show that the Dignity *583 of Man Church is not an organization to which a deductible gift as contemplated by section 170(a) may be made since the orgnization is not one as defined in section 170(c)(2). See Calvin K. of Oakknoll v. Commissioner, 69 T.C. 770 (1978). Petitioners, on the basis of this record, have failed to show that the Dignity of Man Church is organized and operated exclusively for religious purposes as required by section 170(c)(2)(B). No showing is made of how the Dignity of Man Church was operated. The testimony shows that the only members of the Dignity of Man Church are petitioners and Mr. Abney's brother. The evidence does not show whether any religious services were ever conducted by the Dignity of Man Church or what functions, if any, were served by the Dignity of Man Church other than to hold title to the automobiles driven by petitioners and the bank account used to pay petitioners' expenses. Petitioners apparently take the position that it is unnecessary to make any such showing since the Dignity of Man Church is a "chapter" of the Universal Life Church, Inc. However, this record is insufficient to show that in substance as distinquished from form the Dignity *584 of Man Church was a "chapter" of the Universal Life Church. Petitioners have not shown that any "minister" of the Dignity of Man Church performed any of the functions ordinarily performed by ministers, or that any meetings were held by the Dignity of Man Church or that it had any members other than petitioners and Mr. Abney's brother. On the basis of this record, petitioners have failed to show that the Dignity of Man Church was organized and operated exclusively for religious purposes as required by section 170(c)(2) for an organization to be one, gifts to which are deductible under section 170(a). Cf. Western Catholic Church v. Commissioner, 73 T.C.     (Oct. 31, 1979). For this additional reason, petitioners have failed to show error in respondent's disallowance of their claimed deduction for a charitable contribution to the Dignity of Man Church. Although we decide the only issue presented to us for respondent, because of the agreement of the parties with respect to other issues raised by the pleadings Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise so stated.↩
2. Beneath the word "Secretary" was typed the word "Treasurer" followed by a line. Above the line was typed "Albpha P. Abney." Alpha P. Abney is Robert D. Abney's brother.↩
3. By stipulation filed at the trial of this case, respondent conceded all the claimed itemized deductions except the $26,488 claimed as a contribution to the Dignity of Man Church.At the trial petitioner testified that the items donated in 1974 to the Dignity of Man Church which were claimed as deductions considered of the following: 1. House in Seattle
Purchase price
$18,800
Market Value - 1974
35,000
2. Household furniture
Purchase price
7,500
Market Value
1,850
3. Automobile - Mercedes
Purchase Price
7,500
Market Value (Blue Book)
(average) 5,500
4. Cash and checks
3,752
5. Bonnie's car
Purchase price
2,500
Blue Book
800
6. Clothing, etc.
Unknown
Market Value
Unknown
7. Tennis Shop - Value
12,000
The record does not show how the $26,488 claimed on the return was arrived at. Obviously, the above figures, whether using purchase price or amount designated "market value" totaled more than $26,488. If the house in Seattle is eliminated and the figures designated "market Value" are used, the total is $23,902. However, since no market value is given for clothing, etc., it may be that the total claimed on their return consisted of the claimed market value of household furniture, automobiles and tennis shop, with some value for clothing.↩
4. At the trial petitioners conceded that no transfer was made of the house in Seattle to the Dignity of Man Church in the year 1974 or apparently at any time prior to its sale.↩
5. Sections 170(a) and 170(c) provide in part as follows: SEC. 170. CHARITABLE, ETC., CONTRIBUTIONS AND GIFTS. (a) Allowance of Deduction.-- (1) General rule.--There shall be allowed as a deduction any charitable contribution (as defined in subsection (c)) payment of which is made within the taxable year. A charitable contribution shall be allowable as a deduction only if verified under regulations prescribed by the Secretary or his delegate. * * *
(c) Charitable Contribution Defined.--For purposes of this section, the term "charitable contribution" means a contribution or gift to or for the use of-- * * *
(2) A corporation, trust, or community chest, fund or foundation-- (A) creased or organized in the United States or in any possession thereof, or under the law of the United States, any State, the District of Columbia, or any possession of the United States; (B) organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes or for the prevention of cruelty to children or animals; (C) no part of the net earnings of which inures to the benefit of any private shareholder or individual; and (D) no substantial part of the activities of which is carrying no propaganda, or otherwise attempting, to influence legislation, and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of any candidate for public office.↩