LUISE K. WOODS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Woods v. Commissioner
Docket No. 7783-81.
United States Tax Court
T.C. Memo 1982-653; 1982 Tax Ct. Memo LEXIS 91; 45 T.C.M. (CCH) 77; T.C.M. (RIA) 82653; November 15, 1982. Luise K. Woods, pro se. Wayne R. Appleman, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined a deficiency in the amount of $3,501 in petitioner Luise K. Wood's Federal income tax for 1978. The issues for decision are as follows: 1. Whether petitioner is entitled to a deduction in the amount of $9,236.35 for a contribution to the Gospel of Christ Kingdom Church; and 2. Whether petitioner is entitled to an exemption deduction for her son John Woods in computing her income tax for 1978. At the time the petition was filed, petitioner was a legal resident of Hayden Lake, Idaho. On her income tax return for 1978, petitioner claimed a deduction in the amount of $9,236.25 for a charitable contribution deduction to the Gospel of Christ Kingdom Church. To the return was attached *93 a receipt signed by her son, John Woods, on behalf of the Gospel of Christ Kingdom Church for a contribution of $26,322. The deduction was limited to the smaller amount in recognition of the adjusted gross income limitation of section 170(b). [1] On the return petitioner also claimed a dependency exemption deduction for her son, John Woods. The notice of deficiency disallows both deductions. 1. The Charitable Contributions Deduction Issue
The trial record contains some of the standard family church documents: a copy of the opinion in Universal Life Church, Inc. v. United States,372 F.Supp. 770 (E.D. Cal. 1974), holding that the Universal Life Church, Inc., is an exempt organization; a ruling by the Commissioner of Internal Revenue reaching the same conclusion; and the credential issued to John Woods as a minister of the Universal Life Church, Inc. Beyond these formal papers, the record contains virtually no information on the purposes and operations of the organization. As to the funds allegedly contributed to *94 the Gospel of Christ Kingdom Church, it appears that petitioner sold a house in 1978 and bought another one, which was occupied as the family residence ("church parsonage"), in West Jordan, Utah. Later, she sold the West Jordan house and used the proceeds to buy one in Hayden Lake, Idaho. As we understand the sketchy evidence, the funds in the total amount of $26,322, allegedly contributed to the Gospel of Christ Kingdom Church, were the proceeds of the 1978 house sale and were used to buy the West Jordan house. Section 170(a) and (c), [2] insofar as it is here pertinent, allows a deduction for contributions to a "corporation, trust, or community chest, fund, or foundation" which, among other requirements, is "organized and operated" exclusively for religious purposes, no part of the net earnings of which inure to the benefit of a private individual. The record does not show that the Gospel of Christ Kingdom Church meets these requirements. There is no evidence as to the purposes for which it was organized or operated, and there is no detailed evidence as to what was done with the $26,322 allegedly contributed to it. Part of the money apparently was used to buy the West Jordan *95 house, and that house was used as the family residence. Petitioners have not carried the burden of showing that they parted with control of the funds used to buy the house or that they did not use the house after it was bought (or the funds remaining from the $26,322) for their own personal purposes, or that any provision is made for the disposition of the Gospel of Christ Kingdom Church's assets on its dissolution. [3] The Gospel of Christ Kingdom Church has not been shown to meet the section 170(a) and (c) requirements. *96 Although petitioner did not favor the Court with a brief, petitioner's presentation of her case indicated that her main contention is that the Gospel of Christ Kingdom Church is entitled to exemption on the theory that it is part of the exempt Universal Life Church, Inc. The exemption letter introduced in evidence, based on the court's decision in Universal Life Church, Inc. v. United States,supra, relates only to Universal Life Church, Inc.[4] It does not refer to the organizations to which that body has issued "charters." In other words, the exemption letter is not a group exemption; it does not exempt the chartered organizations. Petitioner has the burden of showing that the Gospel of Christ Kingdom Church itself meets the section 170(a) and (b) requirements, and this she has failed to do. Accordingly, the disallowance of the claimed contributions must be sustained. *97 2. The Dependency Exemption Issue
There remains the issue as to the exemption deduction for petitioner's son, John Woods. The deduction was disallowed, as stated by the notice of deficiency addressed to petitioner, "because you did not respond to our specific inquiries." John Woods did not work during the first part of the year and was a student at Utah Technical College from June 12 through December 14, 1978. Sections 151(e)(1)(B)(ii) and 152(a)(1) allow an exemption deduction for a taxpayer's son or daughter, over half of whose support was received from the taxpayer, who is a "student." The term "student" is defined to mean "an individual who during each of 5 calendar months during the calendar year in which the taxable year of the taxpayer begins * * * is a full-time student at an educational organization described in section 170(b)(1)(A)(ii)." Section 151(e)(4). The evidence as to whether petitioner provided more than half of John's support is not wholly satisfactory. He denied that he held a job in 1978, and he testified that he was a student for over 5 months of the year. In addition, he testified that he was hospitalized and had two serious operations during *98 the year. There is no suggestion that John received support or income from anyone except his mother. Bearing in mind that petitioner tried her case without the assistance of an attorney, [5] we think the evidence is sufficient to show that she is entitled to the claimed dependency exemption deduction.
Respondent has conceded that the wrong tax rates were used in computing the amount of the determined deficiency.To reflect that concession and the foregoing, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect during the tax year in issue, unless otherwise noted.↩
2. SEC. 170. CHARITABLE, ETC., CONTRIBUTIONS AND GIFTS. (a) Allowance of Deduction.-- (1) General rule.--There shall be allowed as a deduction any charitable contribution (as defined in subsection (c)) payment of which is made within the taxable year. A charitable contribution shall be allowable as a deduction only if verified under regulations prescribed by the Secretary. (c) Charitable Contribution Defined.--For purposes of this section, the term "charitable contribution" means a contribution or gift to or for the use of-- (1) A State, a possession of the United States, or any political subdivision of any of the foregoing, or the United States or the District of Columbia, but only if the contribution or gift is made for exclusively public purposes. (2) A corporation, trust, or community chest, fund, or foundation-- (A) created or organized in the United States or in any possession thereof, or under the law of the United States, any State, the District of Columbia, or any possession of the United States; (B) organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or to foster national or international amateur sports competition (but only if no part of its activities involve the provision of athletic facilities or equipment), or for the prevention of cruelty to children or animals; (C) no part of the net earnings of which inures to the benefit of any private shareholder or individual; ↩
3. Sec. 1.501(c)(3)-1(b)(4), Income Tax Regs. provides: (4) Distribution of assets on dissolution. An organization is not organized exclusively for one or more exempt purposes unless its assets are dedicated to an exempt purpose. An organization's assets will be considered dedicated to an exempt purpose, for example, if, upon dissolution, such assets would, by reason of a provision in the organization's articles or by operation of law, be distributed for one or more exempt purposes, or to the Federal government, or to a State or local government, for a public purpose, or would be distributed by a court to another organization to be used in such manner as in the judgment of the court will best accomplish the general purposes for which the dissolved organization was organized. However, an organization does not meet the organizational test if its articles or the law of the State in which it was created provide that its assets would, upon dissolution, be distributed to its members or shareholders. It has been stated that "to the extent that a regulation promulgated under Section 501 is designed to effectuate the common Congressional purpose [of both section 170 and section 501], it may afford some general guidance in the proper interpretation of Section 170." Calvin K. of Oakknoll v. Commissioner,69 T.C. 770, 773 (1978), affd. 603 F.2d 211↩ (2d Cir. 1979).
4. In Riemers v. Commissioner,T.C. Memo. 1981-456, this Court stated: In Universal Life Church, Inc. v. United States,372 F. Supp. 770 (E.D. Cal. 1974), the Universal Life Church, Inc. of Modesto, California was held to be exempt under section 501(c)(3). However, that holding applied only to the individual parent church there in issue; it was not a group exemption * * * Therefore, the Valhalla Universal Life Church is not included in the exemption granted to the Universal Life Church, Inc. of Modesto, California, and its status as an organization to which deductible contributions can be made must be determined separately. See also Kellman v. Commissioner,T.C. Memo. 1981-615; Brown v. Commissioner,T.C. Memo. 1980-553; United States v. Toy National Bank, an unreported case ( N.D. Iowa 1979, 43 AFTR 2d 79-954, 79-1 USTC par. 9344); Schilberg v. Commissioner,T.C. Memo. 1982-336↩.
5. See Carasso v. Commissioner,34 T.C. 1139, 1143 (1960), affd. 292 F.2d 367↩ (2d Cir. 1961).