GENE AND DEBRA WEBB, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Webb v. Commissioner
Docket Nos. 9470-86, 25468-86.
United States Tax Court
T.C. Memo 1988-80; 1988 Tax Ct. Memo LEXIS 114; 55 T.C.M. (CCH) 245; T.C.M. (RIA) 88080; February 29, 1988. J. Richard Staley, for the petitioners. Michael Jorgenson, for the respondent. PAJAK
MEMORANDUM FINDINGS OF FACT AND OPINION PAJAK, Special Trial Judge: In these consolidated cases, respondent determined deficiencies in, and additions to, petitioners' Federal income tax as follows: Additions to Tax Under Section
Year
Deficiencies
6651(a)(1)
6653(a)(1)
6653(a)(2) [1]
1982
$   815.00
-0- $ 40.75
*
1983
1,278.73
$ 108.64
63.94
**
1984
863.52
-0- 43.18 ***
*116 Respondent also determined that petitioners were liable for self employment tax in the amount of $ 48.73 for 1983. After numerous concessions, the issues remaining for decision are (1) whether petitioners are entitled to a deduction for alleged charitable contributions to the Universal Life Church (ULC) of Modesto, California (ULC Modesto) or to petitioners' ULC chapter; and (2) whether petitioners are liable for damages under section 6673. FINDINGS OF FACT To the extent stipulated, the facts are so found. Petitioners resided in Orlando, Florida, when their petitions were filed. During the years in question, petitioner Gene Webb (Gene) was employed by the Police Department, Longwood, Florida (as well as on two other jobs in 1982). Gene counseled various persons in performing his duties as a police officer. Gene also was engaged in a Cambridge food supplement business in 1982 and 1983. Petitioner Debra Webb (Debra) was employed by the Orange County Sheriff in 1982, by Fort Lauderdale University in 1983 and 1984, and by MID Florida Communities in 1984. Gene, who was raised and remains a Baptist, became a ULC minister by mail. He provided ULC Modesto with information *117 about himself and received tapes and booklets from ULC Modesto. ULC Modesto issued a certificate declaring Gene to be an ordained minister. Gene's ULC chapter did not have a congregation. Gene did not perform baptisms, marriages, or funerals. Petitioners opened a ULC chapter bank account under the name of Universal Life Church, Inc. Petitioners used the chapter account as a financial alter ego to their personal checking account. Debra was the only person with signatory authority. At Gene's discretion, Debra would withdraw funds from petitioner's personal account. She or Gene would deposit the money in the chapter account, allegedly as a charitable contribution. Debra would then write checks on the chapter account to pay petitioners' mortgage, utilities, telephone, sewage, insurance, maintenance, and property taxes. The funds in the chapter account were used entirely for personal living expenses of petitioners. There was no charitable use of the money. The petitioners' adjusted gross income and claimed contributions to the ULC were as follows: Adjusted
Contributions
Deductions
Year
Gross Income
to ULC
Claimed
1982
$ 21,392.55
$  3,698.00
$ 3,698.00
1983
13,478.06
11,571.01
[2] 6,739.03
*118 ULC Modesto had no control over the chapter account. Petitioners did not make any contributions to ULC Modesto. OPINION It is well established that deductions are a matter of legislative grace, and that taxpayers must satisfy the specific statutory requirements for the deductions they claim. Davis v. Commissioner,81 T.C. 806, 815 (1983), affd. without published opinion 767 F.2d 931 (9th Cir. 1985). Taxpayers bear the burden of proving their entitlement to the deductions they claim. Welch v. Helvering,290 U.S. 111 (1933). A charitable contribution or gift is allowed as a deduction under section 170 if it is made to an entity organized and operated exclusively for religious or charitable purposes, provided that none of the net earnings of the organization inure to the benefit of a private individual. [3] *119 Petitioners have failed to meet virtually every test of section 170(c)(2). First, petitioners' dominion and control over the chapter's checking account precludes a finding that there have been any charitable contributions by petitioners. *120 The term "charitable contribution" as it is used generally in section 170 is largely synonymous with the term "gift." A gift is generally defined as a voluntary transfer of property to another without consideration. Petitioners' retained control and personal benefit preclude a finding of a gift in this case. Davis v. Commissioner,81 T.C. at 817. Second, the only documents in the record are the checks from the local chapter bank account. [4] There is no documentary or other evidence regarding the organization of Gene's chapter or of the distribution of its assets upon dissolution. The failure to provide any such documentation or other evidence means petitioners have failed to prove that Gene's "church" was "organized and operated exclusively for religious * * * purposes." Sec. 170(c)(2)(B); Davis v. Commissioner,81 T.C. at 817; Calvin K. of Oakknoll v. Commissioner,69 T.C. 770, 773 (1978), affd. without published opinion 603 F.2d 211 (2d Cir. 1979); see sec. 1.501(c)(3)-1(b), Income Tax Regs. Moreover, Gene admitted that he had no congregation for his mail-order ministry, but asserted that he had talks with his *121 mother and his wife about his beliefs. Yet his wife candidly admitted that she did not participate in any activities of her husband as a ULC minister. Although Gene claimed he acted as a counselor as a ULC minister, we view this activity as an aspect of his job as a police officer. Thirdly, the record overwhelmingly establishes that the deposits to the chapter bank account inured to petitioners' benefit. Sec. 170(c)(2)(C); Miedaner v. Commissioner,81 T.C. 272 (1983); McGahen v. Commissioner,76 T.C. 468, 482-483 (1981), affd. without published opinion 720 F.2d 664 (3d Cir. 1983). The record clearly shows the persuasive use by Debra, at Gene's direction, of the chapter checking account for petitioners' personal and family expenses. Petitioners admitted that all of their alleged contributions to the chapter went to the payment of family living expenses. Petitioners' assertion that Gene was entitled to a parsonage allowance because they paid their housing *122 expenses from their own funds deposited into the chapter checking account is specious. Section 107 provides in pertinent part that in the case of "a minister of the gospel, gross income does not include . . . the rental allowance paid to him as part of his compensation, to the extent used by him to rent or provide a home." Gene received no compensation from a religious organization. Petitioners are not entitled to exclude compensation from other sources under section 107. Congress has granted this Court the authority to award the United States damages up to $ 5,000 whenever it appears to this Court that the proceedings before it have been instituted or maintained by the taxpayer primarily for delay or that the taxpayer's position in such proceedings was frivolous and groundless. Section 6673. This Court has held numerous times that a taxpayer's liability for tax cannot be escaped by establishing a ULC chapter and then paying personal expenses from the chapter funds. Burwell v. Commissioner,89 T.C. 580 (1987); Davis v. Commissioner,81 T.C. 806 (1983), affd. without published opinion 767 F.2d 931 (9th Cir. 1985). Petitioners were *123 informed by respondent about the provisions of section 6673 and that the Court repeatedly had found actions based on ULC contributions to be without merit. Petitioners nevertheless maintained this action and delayed its determination by failing to produce documentary evidence until four days before trial. Petitioners' waste of the Court's time and resources on a case based on grounds previously determined and their failure to cooperate in the preparation for trial is a disservice to taxpayers with legitimate issues to be determined. We find that the proceedings in this case were instituted and maintained primarily for delay and that petitioners' position in this proceeding is frivolous and groundless. Damages will be awarded to the United States in the amount of $ 2,300. Decisions will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect during the taxable years in question. All rule references are to the Tax Court Rules of Practice and Procedure. * 50% of the interest due on the $ 815.00 underpayment of tax due to negligence. ** 50% of the interest due on the $ 1,278.73 underpayment of tax due to negligence. *** 50% of the interest due on the $ 789.00 underpayment of tax due to negligence.↩
2. Inasmuch as petitioners did not take a deduction for contributions to the Universal Life Church on their 1984 Federal income tax return, we disregard the carryforward of $ 4,831.98 indicated on their 1983 return. Since the 1984 issues have been settled by stipulation, no further consideration of 1984 is necessary. ↩
3. Section 170(c) provides in pertinent part as follows:
SEC. 170(c). CHARITABLE CONTRIBUTION DEFINED. -- For purposes of this section, the term "charitable contribution" means a contribution or gift to or for the use of -- * * * (2) A corporation, trust, or community chest, fund, or foundation-- (A) created or organized in the United States or in any possession thereof, or under the law of the United States, any State, the District of Columbia, or any possession of the United States; (B) organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or to foster national or international amateur sports competition (but only if no part of its activities involve the provision of athletic facilities or equipment), or for the prevention of cruelty to children or animals; (C) no part of the net earnings of which inures to the benefit of any private shareholder or individual, * * * ↩
4. At trial we refused to admit two alleged receipts from ULC Modesto because of their hearsay character. See Mustain v. Commissioner,T.C. Memo. 1982-670↩.