Clarence L. MOREY and Wife, A. Lois Morey, Plaintiffs,

v.

Robert A. RIDDELL, Director of Internal Revenue, District of Los Angeles, Defendant.

Civ. No. 1100-60-WB.

United States District Court
S. D. California,
Central Division.

June 5, 1962.

Dalford Todd, Dallas, Tex., for plaintiffs.

Francis C. Whelan, U. S. Atty., Lillian W. Wyshak, Asst. U. S. Atty., for defendant.

ZIRPOLI, District Judge.

Plaintiffs seek recovery of $5,715.23 in income taxes paid and allegedly erroneously assessed for the years 1952, 1954 and 1955. The assessment complained of resulted from the disallowance of deductions from gross income taken by plaintiffs for the sums they con-

tributed in each of the three years to the church of which they are members.

Plaintiffs contend that the deductions were lawful under the provisions of Section 23 of the Internal Revenue Code of 1939, 26 U.S.C.A. § 23, and Section 170 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 170[1], in that they represented contributions for the use of an association organized in the United States exclusively for religious purposes and operated exclusively for such purposes, with no part of its net earnings inuring to the benefit of any individual. The Government does not dispute and it is manifest from the evidence that the purposes of the church are exclusively religious. The Government rests its position that the contributions do not qualify as deductions principally on the argument that the church is not in fact an "organized" association as contemplated by the statute. This argument is based on the fact that the church has no distinctive identifying name; that it has no written charter, constitution, by-laws, or operational guide other than the Holy Bible; that it has no permanent headquarters; that it does not maintain comprehensive records; and that its funds are not held in a bank account designated as the church account.

These factors noted by the Government might normally be indicative of an absence of unity of purpose or operation. However, in the case of the church in question, they stem from the very doctrinal ties that bind its members together. The members of this church regard themselves simply as members of the body of Christ, that is, members of the body of persons following the teachings of Christ as revealed in the New Testament. They have refrained from adopting a denominational name and any written organizational guide supplementary to the New Testament because they believe that to do so would be to add an arbitrary gloss to biblical precepts, thus obscuring the word of God. Yet, in their adherence to this philosophy, they have bound themselves together in an organized association. Many of them have

1. Section 23 of the Internal Revenue Code of 1939 provides in pertinent part: "*Deductions from gross income.* In computing net income there shall be allowed as deductions: \* \* \* (*o*) *Charitable and other contributions.* In the case of an individual, contributions or gifts payment of which is made within the taxable year to or for the use of: \* \* \* (2) A corporation, trust, or community chest, fund, or foundation, created or organized in the United States or in any possession thereof or under the law of the United States or of any State or Territory or of any possession of the United States, organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual, and no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation."

Section 170 of the Internal Revenue Code of 1954 provides in pertinent part: "*Charitable, etc., contributions and gifts.* (a) *Allowance of deduction.*—(1) *General rule.*—There shall be allowed as a deduction any charitable contribution (as defined in subsection (c)) payment of which is made within the taxable year. \* \* \* (c) *Charitable contribution defined.*—For purposes of this section, the term "charitable contribution" means a contribution or gift to or for the use of— \* \* \* (2) A corporation, trust, or community chest, fund, or foundation—(A) created or organized in the United States or in any possession thereof, or under the law of the United States, any State or Territory, the District of Columbia, or any possession of the United States; (B) organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes or for the prevention of cruelty to children or animals; (C) no part of the net earnings of which inures to the benefit of any private shareholder or individual; and (D) no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation."

Both the Internal Revenue Code of 1939 and the Internal Revenue Code of 1954 define the word "corporation" to include associations. Section 3797 Internal Revenue Code of 1939; Section 7701, Internal Revenue Code of 1954.

worshiped and worked together for years in furtherance of the purposes of the church. They hold regular public meetings in homes and rented quarters for Bible study, worship and evangelism. They assemble together in "camp meetings". As an association, they sponsor radio broadcasts and print and distribute Bible literature. They recognize specific individuals as ministers and as church officers, from whom they accept guidance. Through the years their ministers have regularly performed marriage ceremonies accepted as valid by civil authorities. Thus, while the church lacks some of the common indicia of organization, it plainly is an organized association of persons dedicated to religious purposes.

The Government urges that even if the church is an organized association, it was not organized in the United States, as required by the statute. The basis for this contention is certain testimony that the church had its beginnings in Jerusalem in 33 A.D. It is perfectly obvious that what was meant by this testimony was that the Christian church in the all-inclusive sense began in Jerusalem in 33 A.D. There is no doubt that the association constituting the church for whose use the contributions were made was organized in the United States.

■ It is suggested by the Government that the church does not qualify as a beneficiary for deductible contributions because no showing has been made that in the event of its dissolution its assets would by operation of law be distributed solely for religious purposes. This suggestion is prompted by Section 1.501(c) (3)–1 of the Income Tax Regulations—1954 Code, 26 C.F.R. § 1.501(c) (3)–1, which establishes certain tests which an organization must meet to be certified as exempt from income taxation —one of such tests being that upon dissolution its assets must be distributable solely for an exempt purpose, either by the terms of its articles or by operation of law. This regulation has no governing force in respect to the determination of the deductibility of plaintiffs' contributions for two reasons. It had not yet been promulgated at the time the contributions were made or the tax returns filed.[2] By its terms it is applicable in determining the eligibility of an organization to be certified as tax-exempt under the provisions of Internal Revenue Code Section 501, not in determining whether the organization qualifies as a beneficiary for deductible contributions under Internal Revenue Code Section 170.

The Court recognizes, however, that the two Code sections are companion provisions in the sense that they both reflect a Congressional purpose to encourage the activities of the specified organizations by special tax benefits. Thus, to the extent that a regulation promulgated under Section 501 is designed to effectuate the common Congressional purpose, it may afford some general guidance in the proper interpretation of Section 170. The regulation cited by the Government is obviously intended as a safeguard against the possibility that funds accumulated by an organization by reason of its tax-exempt status might, in the event of its dissolution, be used for purposes other than those to which it was dedicated. By analogy, it would seem a reasonable interpretation of Section 170 that an organization which is the beneficiary of deductible contributions should be organized and operated in such a manner as to provide some assurance that contributions made to further its purposes would not, in the event of its dissolution, be used for other purposes. But, in the present case, it would be purely academic for the Court to engage in an inquiry as to whether, in the event of the dissolution of the church association in question, the laws of all of the states in which it operates would assure the distribution of its assets for religious purposes only. The evidence at the trial es-

---

2. Section 1.501(c) (3)–1 of the Income Tax Regulations—1954 Code was promulgated on June 26, 1959, T.D. 6391, 24 F.R. 5217.

tablished that the church operates in such a manner that its income is expended almost upon receipt in order to carry on its activities, and that there is no substantial accumulation either in the form of savings or physical assets. It is evident that the contributions made by plaintiffs have long since been spent in furtherance of the religious purposes of the church, and that there is no possibility of their application to other uses.

The Government also disputes the deductibility of plaintiffs' contributions to their church because the contributions were made by checks payable to the order of four of the church's ministers. The Government cites several cases in which bequests to members of religious orders were held to be non-deductible, even though the bequests inured to the benefit of the order.[3] These cases are factually distinguishable because in each the Court found that the testator intended to make the bequest to the named individual. In the present case, it is clear from the evidence that plaintiffs did not intend to make contributions to the ministers, individually, but placed the funds in their hands, as agents, for the use of the church.

The Government's final argument is that plaintiffs' contributions were not deductible because they inured to the benefit of individuals. The individuals benefited were the church's recognized ministers, who employed a portion of the contributions given for the use of the church to pay their living expenses. Such use of the contributions does not constitute a departure from the statutory requirement that no part of the net profits of the organization shall inure to the benefit of any individual, for the sums expended to meet the living expenses of the ministers were no part of the net profits of the church. They were monies expended to meet legitimate expenses of the church in implementing its religious purposes. These expenses were of the same character as the salaries paid by any religious or charitable organization to its staff. The evidence was clear that the ministers devoted the major portion of their time to the work of the church and that the amount of church funds used to pay their modest living expenses was small in comparison to the extent of their services.

The Court concludes that the church for whose use plaintiffs' contributions were made met the statutory requirements for a beneficiary of deductible contributions, and that plaintiffs were entitled to deduct such contributions from gross income in computing their net taxable income for the years 1952, 1954 and 1955. Judgment will enter for plaintiffs upon findings and conclusions to be submitted pursuant to the Rules.

---

3. Cox v. Commissioner of Internal Revenue, 297 F.2d 36 (2 Cir. 1961); Estate of Charles J. Barry, 34 T.C. 160 (1960); Estate of Margaret E. Callaghan, 33 T.C. 870 (1960).