ESTATE OF JOHN EDGAR MCALLISTER, SAMUEL LEWIS MCALLISTER AND MERRILL DES BRISAY, EXECUTORS, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5444–67. Filed June 25, 1970.

*George Rowe, Jr.*, and *Daniel J. O'Connell*, for the petitioners. *Stanley J. Goldberg*, for the respondent.

OPINION

Section 2106(a)(2) provides a deduction from the gross estate, situated in the United States at the time of death, of a nonresident alien if the following conditions are met:

SEC. 2106. TAXABLE ESTATE.

(2) TRANSFERS FOR PUBLIC, CHARITABLE, AND RELIGIOUS USES.—

(A) IN GENERAL.—The amount of all bequests, legacies, devises, or transfers * * *

* * * * * * *

(iii) to a trustee or trustees, * * *, but only if such contributions or gifts are to be used within the United States by such trustee or trustees * * * exclusively for religious, charitable, scientific, literary, or educational purposes, * * *

In the case at bar it is the respondent's contention that the decedent's devise, of 25 percent of his residuary estate to a Canadian foundation for the benefit of engineering students who attend Michigan (sometimes hereinafter referred to as the Michigan bequest), fails to meet section 2106(a)(2) on two grounds. First, the Michigan bequest was dependent upon the performance of a precedent event and the possibility that the bequest would not become effective was not "so remote as to be negligible." Sec. 20.2106–1(a)(2), Estate Tax Regs.; sec. 20.2055–2(b), Estate Tax Regs. Second, assuming the possibility that the bequest would not become effective was so remote as to be negligible, it, nonetheless, fails to meet the terms of section 2106(a)(2)(A)(iii) because the bequest was not to trustees for use within the United States. We will consider the respondent's contentions each in turn.

The decedent's will provides, in pertinent part:

If and when the Michigan College of Mining and Technology, Houghton, Michigan, U.S.A., establishes in Canada to the satisfaction of my Trustees, a charitable foundation corporation or a charitable trust so that monies may be received by it in Canada from my estate and others and the said money spent in Canada without income tax or succession duty levies of any kind, then on that happening, and only then, my Trustees are to pay the remaining twenty-five percent of the net annual income to the said charitable foundation * * *

It is the respondent's position that the above-quoted dispositive paragraph contains three conditions which according to the terms of the decedent's will had to be satisfied before the Michigan bequest could become effective:

1. That Michigan establish a foundation in Canada;
2. that the foundation qualify for Canadian tax exemption; and
3. that the trustees of the decedent's estate be satisfied with the foundation as completed.

We hold that despite these conditions, considered individually and in toto, the possibility that the Michigan bequest would not become effective was so remote as to be negligible.

The question of remoteness is purely factual. *Estate of Russell Harrison Varian*, 47 T.C. 34, 48 (1966), aff'd. 396 F. 2d 753 (C.A. 9, 1968); *Estate of Abraham L. Buckwalter*, 46 T.C. 805, 818 (1966). As noted, our careful consideration of all of the facts and circumstances convinces us that there was a mere negligible possibility that the bequest would fail. *Estate of Russell Harrison Varian*, *supra* at 50.

As to the first condition, one can safely presume that Michigan would take all steps necessary to avail itself of the benefits of the $325,-159.58 bequest. This is particularly true since, as we have indicated in our findings of fact, all that was required of Michigan was that it request the decedent's executors to proceed.

On brief respondent makes mention of the fact that the decedent's will directed that financial assistance be extended to "plodders" who otherwise might not be able to attend Michigan. It is the respondent's contention that Michigan might not find these "plodders" desirable as students. We do not feel that this fact would tend to influence Michigan's decision against acceptance of the bequest. The decedent's will provided that assistance be rendered "worthwhile students." And we believe that it is generally recognized that not all worthwhile students are possessed of mercurial intelligence. A plodder is "a person who proceeds or works slowly, steadily, and unimaginatively." *Webster's Third New International Dictionary* (1969 unabridged). While not scholarship material in one sense it is our view that these slow but diligent students would be a welcome addition to the college campuses of the day.

Respondent's other arguments on this point are concerned with whether the bequest would be of financial benefit to Michigan rather than merely creating additional burdens by reason of an influx of students. However, it is the function of a college to benefit students and while it may be argued that colleges would be less burdened with fewer students we find this method of reasoning sophistic.

As to the matter of obtaining Canadian tax exemptions, we find the possibility of failure so remote as to be negligible. As it appears from our findings of fact securing rulings from appropriate authorities was merely a matter of proceeding through administrative channels. The Canadian taxing authorities were charged with interpreting existing law in much the same fashion that our Internal Revenue Service is so charged. Since the petitioners ultimately obtained the exemptions and since the determinations of the Canadian taxing authorities relate back to the date of decedent's death, it seems that there were never any obstacles to the requisite exemptions. It was almost a certainty from the outset that this condition of the Michigan bequest would be satisfied. The relative ease with which the exemptions were procured certainly supports this conclusion.

The respondent contends that there was a "strong possibility" that the exemptions would not be forthcoming because section 62(1) (f) of the Income Tax Act of the Dominion of Canada requires that funds be used in Canada before exemption is permitted. Without delving into the mysteries of Canadian tax law it suffices to say that we are blessed with the opinions of Canada's Department of National Revenue, Taxation Division, and Ontario's Treasury Department, Succession Duty Office, which, in fact, granted exemption.[3]

As to the third condition, i.e., the satisfaction of the decedent's trustees, we also hold that the possibility of failure was so remote as to be negligible. Once the foundation had been established and the tax exemption assured the trustees were powerless to withhold approval. Under the terms of the decedent's will the trustees were merely given the duty of seeing to it that a tax-exempt foundation was established. The respondent contends that the trustees were given no standards and that their discretion was unbounded. However, the intention of the decedent is manifest from the face of his will and the discretion of the trustees was clearly circumscribed by this manifestation.

Further, respondent argues that there were circumstances present as of the date of decedent's death which would tend to discourage the trustees from expressing their satisfaction; i.e., the difficulty of obtaining tax exemption and difficulties concerning construction of the

---

[3] The question of whether the funds were to be used within the United States for purposes of sec. 2106(a) (2) (A) (iii) will be discussed *infra*.

decedent's will. As to the first of these circumstances, we have dealt at length herein with the lack of obstacles to tax exemption. As to the second we find the decedent's will clearly drawn.

Respondent also argues that no benefit would arise from the Michigan bequest since if the bequest had failed the 25-percent interest would have reverted to the University of Toronto where it would have been utilized for the same purposes. This argument ignores the fact that the decedent's intention was clearly expressed and, perhaps equally important, the decedent's estate stood to gain a substantial tax benefit with the effectuation of that intention.

We have heretofore considered each condition individually; taken in the aggregate their weight is no greater. The very fact that the foundation seems to have commenced its operation with such relative ease disposes of the respondent's contention. The obvious purpose of section 20.2055-2(b), Estate Tax Regs., is to prevent the allowance of a charitable deduction when more than a remote possibility exists that the charitable organization will not receive the benefit of a given devise or bequest. Based on all the facts and circumstances of the instant case we do not find that such a possibility existed here.

We turn now to a consideration of the respondent's second contention; i.e., that the Michigan bequest fails to meet section 2106(a)(2)(A). Admittedly this contention is more difficult to resolve. However, we hold that the bequest meets the terms of section 2106(a)(2)(A)(iii), thus rendering consideration of clauses (i) and (ii) unnecessary.

Clause (iii) of section 2106(a)(2)(A) provides, in effect, that the bequest must be to trustees for use within the United States. The respondent simply argues that "neither the trustees of the estate nor the Foundation itself uses the funds in the United States."

The facts as to this question are largely uncontested. The decedent's trustees would accumulate the income generated by the residuary estate and deposit 25 percent of the net income in a Toronto bank. The Canadian foundation would draw checks on this bank, making them payable to the students who were to receive assistance. The checks were then sent to Michigan where upon arrival the student recipient would endorse the check to Michigan. The proceeds were then credited against the cost of tuition and any excess made available to the particular student for use while at the college.

These facts indicate to us that the funds in question were used by the trustees in the United States for educational purposes. The Canadian foundation merely acted as a conduit.[4] *Estate of Harley J. Davis,*

---

[4] Respondent in its own revenue ruling has approved the "conduit" concept. See, e.g., Rev. Rul. 63-252, 1963-2 C.B. 101.

26 T.C. 549 (1956); accord, *Morey* v. *Riddell*, 205 F. Supp. 918, 921 (S.D. Cal. 1962). The funds were clearly destined for use by Canadian students within the United States. It is true, as the respondent contends, that Canada would benefit from the Michigan bequest by having its citizens educated as engineers. However, it is also true that the actual expenditure of money occurred in the United States and Michigan and its community were the ultimate recipients and beneficiaries of this portion of the foundation's income.

Section 303(b)(3) of the Revenue Act of 1926, the predecessor of section 2106, was enacted by Congress without comment in the committee reports on the meaning of the phrase "within the United States." However, H. Rept. No. 1860, 75th Cong., 3d Sess., p. 19 (1938), 1939–1 C.B. (Part 2) 742, states, with reference to the predecessor of section 170(c)(2)(A) which limited contributions to domestic organizations, that the reason therefor is that the deduction is allowed because by the contribution "the Government is compensated for the loss of revenue by its relief from financial burden." It seems reasonable to assume that Congress had the same intent when it enacted section 303(b)(3) of the 1926 Act. Therefore, it is our view that the United States is being compensated by the assistance that the Michigan bequest lends Michigan. We find that allowance of the deduction herein is in accord with the implicit legislative intent.

On brief the respondent devotes a considerable portion of his argument to the fact that the letters patent of the foundation stated that the purpose of the foundation is "to receive, establish and maintain a fund or funds and to apply from time to time all or part thereof and/or the income therefrom for educational purposes *within Canada*, [Emphasis added.]" and that the foundation has proceeded in accordance with its letters patent thus maintaining its exempt status under Canadian taxing statutes. Without passing on the rectitude of the determinations of the Secretary of State or of the Canadian taxing authorities we would simply reiterate that we have reached an independent conclusion that the Michigan bequest is being used within the United States. We have concerned ourselves with the objective fact that Michigan and its environs "wound up with the money," to put it in the vernacular. In addition, we are not bound by the executive or administrative determinations of Canadian authorities in matters germane to United States taxation. See *Commissioner* v. *Estate of Bosch*, 387 U.S. 456 (1967); *Estate of Florence H. Lawler*, 52 T.C. 268, 276 (1969).

In accordance with the foregoing,

*Decision will be entered under Rule 50.*