CALVIN K. AND MARY I. OF OAKKNOLL, PETITIONERS v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2192–75. Filed February 23, 1978.

Calvin K. of Oakknoll, pro se.
*Paul E. Vignone,* for the respondent.

IRWIN, *Judge:* Respondent determined deficiencies in petitioners' income taxes for the calendar years 1971 and 1972 in the amounts of $1,522.14 and $694.06, respectively.

After a concession by petitioners, the only issue which remains for our decision is whether petitioners are entitled to deductions for contributions made to the Religious Society of Families.

## FINDINGS OF FACT

Petitioners Calvin K. and Mary I. of Oakknoll, husband and wife, were legal residents of Frewsburg, N.Y., at the time of filing their petition herein. Although it is not clear from the record where they filed their returns for the years in issue, they also resided in Frewsburg, N.Y., at that time.

Petitioners founded the Religious Society of Families on June 20, 1963. The three main tenets of the society are to control population growth, to guide human evolution in a positive manner, and to care for the life-support systems of the earth so that life on earth may exist forever.

In furtherance of this last tenet the religion adopted a territorial concept of marriage, in which a couple is not only married to one another, but is also married to a plot of land, the care of which they are charged with for life. The couple does not cultivate the land, but rather attempts to ensure that it will remain in its natural, life-supporting state.

In order to be able to bring in new members, it was necessary that the Religious Society of Families have a sufficient quantity of land. Petitioners initially owned 50 acres which they donated to the church. Subsequent acquisitions of land made by the church have been with funds contributed largely by petitioners.

In 1968, prior to donating the land, the Religious Society of Families incorporated under the religious corporation law of New York. There was and still is a written interim constitution. The Religious Society of Families has held annual meetings and, in addition, has held one special meeting for the purpose of transferring real property to the church.

There were seven charter members who started the church. However, the church only accepts as full members a couple married under the auspices of the church ceremony, with the marriage contract being evidence of full membership. In the ceremony the couple makes the required vows to follow the tenets of the Religious Society of Families. Thus far, only petitioners have performed the necessary marriage ceremony.

The religion does attempt to solicit new members. Although efforts have not been fruitful, it has not been for lack of trying. As of December 1972, there was still only one member of the church (one family is counted as one member) and that was the petitioner and his wife.

OPINION

While we are convinced of the sincerity of petitioners' convictions, we must deny them the deductions which they took for contributions made to the Religious Society of Families during the years in issue.

A charitable contribution is defined in section 170(c) which states in part:

(c) CHARITABLE CONTRIBUTION DEFINED.—For purposes of this section, the term "charitable contribution" means a contribution or gift to or for the use of—

\* \* \* \* \* \* \*

(2) A corporation, trust, or community chest, fund, or foundation—

(A) created or organized in the United States or in any possession thereof, or under the law of the United States, any State, the District of Columbia, or any possession of the United States;

(B) organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or to foster national or international amateur sports competition (but only if no part of its activities involve the provision of athletic facilities or equipment), or for the prevention of cruelty to children or animals;

(C) no part of the net earnings of which inures to the benefit of any private shareholder or individual; \* \* \*

The burden of proof is, of course, upon the petitioners to show entitlement to the charitable contribution deduction. They must show, inter alia, that their organization was operated exclusively for religious purposes and that no part of the net earnings of said organization inures to the benefit of any individual. For purposes of this decision we have confined our consideration to this test alone and do not reach any of the other arguments raised by respondent.

The problem in meeting that standard in the case before us is that upon dissolution of the organization (an occurrence wholly within petitioners' control) its assets will revert to petitioners; at the least they will have ultimate authority over their disposition. Even though they may intend at this time to distribute the assets to some other exempt organization, there is not the irrevocable commitment which allows us to find it was "operated exclusively for religious \* \* \* purposes" and "no part of the net earnings of which inures to the benefit of any private shareholder or individual." In this regard section 1.501(c)(3)–1(b)(4), Income Tax Regs., is instructive in stating:

An organization is not organized exclusively for one or more exempt purposes

unless its assets are dedicated to an exempt purpose. An organization's assets will be considered dedicated to an exempt purpose, for example, if, upon dissolution, such assets would, by reason of a provision in the organization's articles or by operation of law, be distributed for one or more exempt purposes, or to the Federal government, or to a State or local government, for a public purpose, or would be distributed by a court to another organization to be used in such manner as in the judgment of the court will best accomplish the general purposes for which the dissolved organization was organized. However, an organization does not meet the organizational test if its articles or the law of the State in which it was created provide that its assets would, upon dissolution, be distributed to its members or shareholders.

While this regulation does not specifically relate to section 170, "to the extent a regulation promulgated under Section 501 is designed to effectuate the common Congressional purpose [of both section 170 and section 501], it may afford some general guidance in the proper interpretation of Section 170." *Morey v. Riddell*, 205 F. Supp. 918, 920 (S.D. Cal. 1962).

It can be seen that petitioners fail to meet the standard set forth in the regulation. Petitioners have done nothing to irrevocably commit disposition of the assets to another qualifying charity if the Religious Society of Families were to dissolve. As such, petitioners have not carried their burden of proof to justify the deduction.

*Decision will be entered for the respondent.*