WILLIAM R. AND LORNA E. HALL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hall v. Commissioner
Docket No. 11869-80.
United States Tax Court
T.C. Memo 1982-337; 1982 Tax Ct. Memo LEXIS 412; 44 T.C.M. (CCH) 151; T.C.M. (RIA) 82337; June 16, 1982. William R. Hall, pro se. Michele D. Palmer, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined a deficiency in the amount of $1,273 in petitioners' Federal income tax for 1976, together with an addition to tax under section 6653(a)[1] in the amount of $64. Two issues are presented for decision: 1. Whether petitioners are entitled under section 170(a) and (c) to a deduction for 1976 in the amount of $3,917 for a purported contribution to an organization named the Church of United Brotherhood; and 2. Whether any part of petitioner's underpayment of tax for 1976 was due to negligence or intentional disregard of the rules within the meaning of section 6653(a). FINDINGS OF FACT Petitioners William R. and Lorna E. Hall were legal residents of Glendale, California, when they filed their petition. They timely filed a Federal income tax return for 1976. On their return they deducted a total of *414 $3,951 as charitable contributions, and respondent disallowed $3,917 of that amount. The issue in controversy arises as a result of the activities of William R. Hall, and he will be referred to as petitioner. In 1976, petitioner wrote 20 checks in the total amount of $3,915 payable to the Church of United Brotherhood (CUB). Some of the checks payable to CUB were not endorsed; the others were endorsed in the name of Barry R. Schilberg individually or on behalf of CUB. CUB was not a corporation, trust, or part of a community chest. It obtained a "charter" from the Universal Life Church, Inc. of Modesto, California, but the Universal Life Church, Inc. exercised no control over its funds, doctrine, or activities. CUB had no formal doctrine as such and no formalized ritual. Its tenets consisted of the conviction that one should "do right" with "the restriction that you do not violate other people's rights." Families of the members belonging to CUB held meetings on an irregular basis. The meetings consisted of gatherings where the members discussed life in general and shared meals. CUB had no church building, and the gatherings were held in homes or in public parks. The "largest *415 difference" between such a meeting and any other social dinner meeting was that "there was grace said prior to eating" and there was "general discussion of the church." An average of about 10 persons attended these meetings. The CUB was organized by three individuals who at one time worked together. Those individuals, petitioner, Barry Schilberg, and Louis Alvarado, were referred to as CUB's ministers and officers. In 1976, Alvarado was pastor, Barry Schilberg was treasurer, and petitioner was recording secretary. Petitioner was "ordained" by the Universal Life Church, Inc.; he received his certificate of ordination through the mail by requesting it. CUB had a checking account in a local bank, and all three organizing officers were authorized to draw checks on the account. The money contributed by petitioner and the other officers was deposited in that account, and money was then disbursed from the account to petitioner, Schilberg, and Alvarado in the form of a "rental allowance," as "direct payments of utility bills," or as house payments. The amount of the rental allowance depended upon the availability of funds in the checking account, and petitioner does not know the *416 amount that he received. Petitioner had no knowledge of the total amount of the receipts or the total amount of the rental or housing assistance. All decisions on the disbursement of funds were made by the "board of directors of the congregation," consisting of petitioner, Schilberg, and Alvarado. Respondent disallowed the deduction claimed by petitioner for contributions to CUB. OPINION Section 170(a)[2]allows as a deduction any "charitable contribution * * * payment of which is made within the taxable year." Under section 170(c), the term charitable contribution is defined, in pertinent part, as a contribution or gift to or for the use of a "corporation, trust, or community chest, fund, or foundation." Among other requirements, the organization to which the contribution is made must be "organized and operated exclusively for religious * * * purposes * * *," and "no part of the net earnings" may inure "to the benefit of any private shareholder or individual." To establish that he is entitled to the claimed deduction, petitioner has the burden of showing that CUB met these requirements. *417 Petitioner did not offer any of the documents (if there were any) pursuant to which CUB was organized except a paper labeled as a "charter" which on its face indicates that it was issued by the Universal Life Church, Inc. The document merely certifies that a charter has been granted to CUB by the Universal Life Church, Inc., Modesto, California. Petitioner admitted that CUB was not a corporation, trust, or community chest, the only types or organizations referred to in section 170(c)(2) as ones to which contributions may be made and allowed as deductions. Organizational documents are important under section 170(a) and (c) because they ordinarily provide evidence indicating whether an entity alleged to be a religious organization, for example, was organized "exclusively" for religious purposes as required by the section. Moreover, they may reflect what safeguards were adopted to avoid the proscribed inurement of income to private individuals, including inurement upon dissolution. See sec. 1.501(c)(3)-1(b), Income Tax Regs. In Calvin K. of Oakknoll v. Commissioner,69 T.C. 770, 772 (1978), affd. 603 F.2d 211 (2d Cir. 1979), *418 this Court held that an organization was not exempt, stating: * * * upon dissolution of the organization (an occurrence wholly within petitioners' control) its assets will revert to petitioners; at the least they will have ultimate authority over their disposition. Even though they may intend at this time to distribute the assets to some other exempt organization, there is not the irrevocable commitment which allows us to find it was "operated exclusively for religious * * * purposes" and "no part of the net earnings of which inures to the benefit of any private shareholder or individual." [3]
*419 Apart from possible inurement to private individuals upon the dissolution of CUB, we are not satisfied from the vague testimony presented at the trial that CUB's receipts in the form of contributions were not disbursed by CUB simply to pay the housing expenses of the contributors. Petitioner testified that he believed individuals other than the three organizers had contributed to CUB but, when pressed for details, twice stated that he had no "documentation" on such contributions or "anything to substantiate that." Both petitioner and Schilberg testified that CUB would pay rental allowances to its three organizing officer-ministers when it had funds "available"; the amounts were not fixed. Petitioner testified that "the three directors of the congregation, the majority of those three would give approval at the issuance of each specific check," but he repeatedly testified that he did not know how much he received from CUB. Petitioner, Schilberg, and Alvarado were the only ones who received rental allowances.
This domination of CUB by only three individuals "may not necessarily disqualify it for exemption," but "it provides an obvious opportunity for abuse of the claimed tax-exempt *420 status. It calls for open and candid disclosure of all facts bearing upon petitioner's organization, operations, and finances so that the Court, should it uphold the claimed exemption, can be assured that it is not sanctioning an abuse of the revenue laws." Bubbling Well Church of Universal Love, Inc. v. Commissioner,74 T.C. 531, 535 (1980), affd. 670 F.2d 104 (9th Cir. 1981). No such candid disclosure of facts has been made here. The complete absence of documentary or other specific evidence of any substance on the amounts and circumstances of, and standards for, the disbursements made by CUB convinces us that it was created only as a tax avoidance scheme designed to provide deductions under section 170(a) and (c), and exclusions from income under section 107[4] of the rental, utility, or house payment allowances distributed to petitioner, Schilberg, and Alvarado. *421 Petitioner sought to explain the absence of documentary evidence pertaining to the disposition of CUB's funds on the ground that all records had been transmitted to the Universal Life Church, Inc., but he did not show that he had made any effort to retrieve records pertinent to the issues here in controversy by subpoena or otherwise. Schilberg, who was the treasurer of CUB, testified but gave no specific details concerning its finances. From the evidence presented, we are not convinced that each of the officers (petitioner, Schilberg, and Alvarado) did not take "rental allowances" from CUB in amounts equivalent to their respective contributions. Petitioner states and reiterates the CUB was an integral part of the Universal Life Church, Inc., which is an exempt organization. But that incantation does not establish any such fact. Petitioner testified that a standard application form, which he described only in general terms, was filed with the Universal Life Church, Inc. and that the charter, which we have described, was received. He admitted that the Universal Life Church, Inc. has "no control as such over the congregation as far as doctrine, regulation of services"; each congregation *422 merely files reports on a quarterly basis of "the number of services, the attendants, the contributions and expenses and whatever the working balance of funds that each congregation maintains." The mere making of such general reports clearly does not entitle CUB to share in United Life Church's individual (not group) exemption. [5]
*423 We are left with the firm conviction that CUB was used predominantly for personal purposes and that any religious activities connected with it were of minimal significance. It did not meet the section 170(a) and (c) requirements. Cf. Basic Bible Church v. Commissioner,74 T.C. 846 (1980); Bubbling Well Church of Universal Love, Inc. v. Commissioner,supra,Unitary Mission Church v. Commissioner,74 T.C. 507 (1980), affd. 647 F.2d 163 (2d Cir. 1981). As to the section 6653(a) addition to tax, petitioner offered no evidence to sustain his burden of proof. Petitioner is a well-educated, intelligent individual, and he must have known that erecting the CUB facade of a church would not lawfully entitle him to deduct the contributed amounts and exclude his so-called rental allowances. Absent any evidence on the point, we must sustain the section 6653(a) addition to tax.
Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect during the tax year in issue, unless otherwise noted.↩
2. Sec. 170provides in part: SEC. 170.CHARITABLE, ETC., CONTRIBUTIONS AND GIFTS. (a) Allowance of Deduction.-- (1) General rule.--There shall be allowed as a deduction any charitable contribution (as defined in subsection (c)) payment of which is made within the taxable year. * * * (c) Charitable contribution Defined.--For purposes of this section, the term "charitable contribution" means a contribution or gift to or for the use of-- (2) A corporation, trust, or community chest, fund, or foundation-- (A) created or organized in the United States or in any possession thereof, or under the law of the United States, any State, the District of Columbia, or any possession of the United States; (B) organized and operated exclusively for religious * * * purposes * * *; (C) no part of the net earnings of which inures to the beneit of any private shareholder or individual; * * *↩
3. Sec. 1.501(c)(3)-1(b)(4), Income Tax Regs.provides: An organization is not organized exclusively for one or more exempt purposes unless its assets are dedicated to an exempt purpose. An organization's assets will be considered dedicated to an exempt purpose, for example, if, upon dissolution, such assets would, by reason of a provision in the organization's articles or by operation of law, be distributed for one or more exempt purposes, or to the Federal government, or to a State or local government, for a public purpose, or would be distributed by a court to another organization to be used in such manner as in the judgment of the court will best accomplish the general purposes for which the dissolved organization was organized. However, an organization does not meet the organizational test if its articles or the law of the State in which it was created provide that its assets would, upon dissolution, be distributed to its members or shareholders. It has been stated that "to the extent a regulation promulgated under section 501 is designed to effectuate the common Congressional purpose [of both sec. 170 and sec. 501], it may afford some general guidance in the interpretation of Section 170." Morey v. Riddell,205 F.Supp. 919, 920 (S.D. Cal. 1962); Calvin K. of Oakknoll v. Commissioner,69 T.C. 770, 773 (1978), affd. 603 F.2d 211↩ (2d Cir. 1979).
4. Sec. 107provides as follows: SEC. 107. RENTAL VALUE OF PARSONAGES. In the case of a minister of the gospel, gross income does not include-- (1) the rental value of a home furnished to him as part of his compensation; or (2) the rental allowance paid to him as part of his compensation, to the extent used by him to rent or provide a home.↩
5. In Riemers v. Commissioner,T.C. Memo. 1981-456, this Court stated: In Universal Life Church, Inc. v. United States,372 F. Supp. 770 (E.D. Cal. 1974), the Universal Life Church, Inc. of Modesto, California was held to be exempt under section 501(c)(3). However, that holding applied only to the individual parent church there in issue; it was not group exemption * * * Therefore, the Valhalla Universal Life Church is not included in the exemption granted to the Universal Life Church, Inc. of Modesto, California, and its status as an organization to which deductible contributions can be made must be determined separately. See also Kellman v. Commissioner,T.C. Memo. 1981-615; Brown v. Commissioner,T.C. Memo. 1980-553; United States v. Toy National Bank, an unreported case ( N.D. Iowa 1979, 43 AFTR 2d 79-954, 79-1 USTC par. 9344); Schilberg v. Commissioner,T.C. Memo. 1982-336↩.