CHARLES OWENS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Owens v. Commissioner
Docket No. 8229-79.
United States Tax Court
T.C. Memo 1982-671; 1982 Tax Ct. Memo LEXIS 70; 45 T.C.M. (CCH) 156; T.C.M. (RIA) 82671; November 22, 1982. Charles Owens, pro se. Wayne R. Appleman, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined a deficiency in the amount of $483.80 in petitioner's Federal income tax for 1976. Two issues are presented for decision: 1. Whether petitioner is entitled to a deduction in the amount of $3,300 for a contribution in 1976 to an alleged church, the Objectivist Assembly; and 2. Whether petitioner is entitled to a deduction in the amount of $455 for a casualty loss arising from the alleged failure of a trucking company to deliver to petitioner in San Francisco, California, certain household items shipped from Toronto, Canada. At the time the petition was filed, petitioner was a legal resident of San Francisco, California. During 1976, he was employed as a clerk by Macy's Department Store and by Bechtel Construction Co. According to his 1976 income tax return, his income in 1976 came to $9,393.03, including capital gain in *72 the amount of $105.62. 1. The Contributions Deduction Issue
During 1976, petitioner drew nine checks on his personal bank account with the First Enterprise Bank, San Francisco, California, payable to the Objectivist Assembly in the total amount of $3,300 and claimed that amount as a charitable contribution deduction on his 1976 return. The checks were endorsed "Pay to the order of Chartered Bank of London, Account of Objectivist Assembly," followed by petitioner's signature. Petitioner was the only person authorized to draw checks on the Objectivist Assembly account, and he refused to disclose the purposes for which funds withdrawn from the account were used. Petitioner introduced into evidence the standard documents issued by the Universal Life Church, Inc., Modesto, California: "Credentials of Minister," dated April 8, 1976, certifying that petitioner is a minister; a "Charter," bearing the same date, certifying that a "Congregation of the Universal Life Church, Inc. is started," and the exemption ruling issued by the Internal Revenue Service to the Universal Life Church, Inc., of Modesto, California. Petitioner declined to identify anyone else who was a member of *73 the Objectivist Assembly. Petitioner offered as evidence a letter headed "Annual Receipt of Contributions for the Year of 1976," addressed to him purportedly by Bishop R. E. Imbeau, Ph.D., Vice President, Universal Life Church, Inc., of Modesto, California. [1] The letter was excluded from evidence because of its hearsay character. As noted above, the $3,300 in dispute was deposited in the bank account carried in the name of the Objectivist Assembly, and petitioner was the only person authorized to write checks on that account. There is no hint in the testimony that petitioner transmitted any of the money to an exempt organization. Section 170(a) [2] allows as a deduction any "charitable contribution * * * payment of which is made within the taxable year." By section 170(c) the term charitable contribution is defined, in pertinent part, as a contribution or gift to or for the use of "A corporation, trust, or community *74 chest, fund, or foundation." Among other requirements for a deduction to be allowable, the organization to which the contribution is made must be "organized and operated exclusively for religious * * * purposes" and "no part of the net earnings" may inure "to the benefit of any private * * * individual." To establish his right to the claimed deduction, petitioner has the burden of showing that the Objectivist Assembly met these requirements. *75 Petitioner did not make the requisite showing. He offered none of the documents (if there were any) pursuant to which the Objectivist Assembly was created except the "Charter" which on its face indicates that it was issued by the Universal Life Church, Inc. This paper does not show that the Objectivist Assembly was a "corporation, trust, or community chest, fund, or foundation," as used in section 170(c)(2), "organized and operated" exclusively for religious purposes. Indeed, the trial record shows none of the purposes or operations of the Objectivist Assembly. Organizational documents are important not only for showing the organization's purposes but also because they may reflect what safeguards, if any, were adopted to avoid the proscribed inurement of income to private individuals, including inurement upon dissolution. See sec. 1.501(c)(3)-1(b), Income Tax Regs. In Calvin K. of Oakknoll v. Commissioner,69 T.C. 770, 772 (1978), affd. 603 F.2d 211 (2d Cir. 1979), this Court held that an organization was not exempt, stating: * * * upon dissolution of the organization (an occurrence wholly within petitioners' control) its assets will revert *76 to petitioners; at the least they will have ultimate authority over their disposition. Even though they may intend at this time to distribute the assets to some other exempt organization, there is not the irrevocable commitment which allows us to find it was "operated exclusively for religious * * * purposes" and "no part of the net earnings of which inures to the benefit of any private shareholder or individual." [3]
*77 Not only does the trial record fail to show what was to become of the Objectivist Assembly funds on its dissolution, it fails completely to show what petitioner did with the funds he deposited in the Objectivist Assembly account. From petitioner's refusal to answer direct questions as to what he did with those funds, we can infer only that he used them for his own benefit. [4]
Petitioner appears to base his deduction claim mainly upon the fact that the Universal Life Church, Inc., has received exemption from income taxes and the argument that, therefore, the Objectivist Assembly "congregation" is also entitled to exemption. This Court has repeatedly pointed out that the Universal Life Church, Inc., exemption applies only to the "parent" church referred to in Universal Life Church, Inc. v. United States,372 F.Supp. 770 (E.D. Cal. 1974), and not to the numerous entities claiming exemption on the theory that they were chartered by that organization. That exemption *78 ruling was not a group exemption. For contributions to any other organization "chartered" by the Universal Life Church, Inc., to be deductible under section 170(c), the taxpayer must show that such organization meets the statutory standards. [5]
*79 We are left with the firm conviction that the Objectivist Assembly was used predominantly for personal purposes and that any religious activities connected with it were of minimal significance. It did not meet the section 170(a) and (c) requirements. Cf. Basic Bible Church v. Commissioner,74 T.C. 846 (1980); Bubbling Well Church v. Commissioner,74 T.C. 531, 535 (1980), affd. 670 F.2d 104 (9th Cir. 1981); Unitary Mission Church v. Commissioner,74 T.C. 507 (1980), affd. 647 F.2d 163 (2d Cir. 1981). We recognize that petitioner may have been duped into paying organizational and other fees for the trappings of a church, and it is a sad commentary on our age that the sacred concepts of a church, are cynically used for tax avoidance or protest. However, regardless of whether petitioner was misled or deliberately sought to subvert section 170(c), he is not entitled to the claimed deduction. 2. The Casualty Loss Issue
Petitioner claimed a loss deduction for the alleged value of missing articles lost during a shipment of household goods. The claim is apparently based on section 165(c)(3) which allows *80 a deduction for "losses of property not connected with a trade or business, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft." It is stipulated that on October 6, 1975, petitioner shipped household goods from Toronto, Canada, to San Francisco, California. Upon receipt of the shipment in San Francisco on October 23, 1975, some of the goods were missing. On June 21, 1976, the Canadian shipper wrote petitioner that it could not find any of the missing items in its warehouse but was still looking for the articles by checking "the route of the shipment after it left our warehouse until it reached you." Under date of March 18, 1977, petitioner received a letter from the Ontario Trucking Association suggesting that, if "a satisfactory settlement has not been made," petitioner should contact the Ontario Highway Transport Board or Interstate Commerce Commission. Petitioner has not shown that he is entitled to the disputed deduction. Section 165(c)(3) does not provide a deduction for every loss. It provides a deduction for nonbusiness losses arising only from "fire, storm, shipwreck, or other casualty, or from theft." Petitioner was unable to trace the *81 missing items and, understandably, was unable to prove what caused the loss. Thus, he is unable to show that his loss falls within section 165(c)(3). His failed efforts to recover from the shipper do not entitle him to recover his loss, in part, through tax deduction. Moreover, as pointed out by respondent, section 1.165-1(d), Income Tax Regs., provides, in part, that a casualty loss is deductible in the year incurred unless there is a "reasonable prospect of recovery" and then the loss is treated as sustained when "it can be ascertained with reasonable certainty whether or not such reimbursement will be received." The loss here was incurred in 1975. Petitioner received the letter in 1976 indicating the shipper was still attempting to locate the missing items. Even as late as March 1977, he received a letter indicating that efforts to locate his goods were continuing. Even if petitioner had shown that his loss was attributable to a casualty within the meaning of section 165(c)(3), he has not shown that the loss is deductible in 1976. To reflect the foregoing, Decision will be entered for the respondent.
Footnotes
1. For the details of the mechanics on how letters addressed to taxpayers by Bishop R. E. Imbeau, Ph.D., Vice President, Universal Life Church, Inc., of Modesto, California, have been generated, see Mustain v. Commissioner,T.C. Memo. 1982-670↩.
2. All section references are to the Internal Revenue Code of 1954, as in effect during the tax year in issue, unless otherwise noted. SEC. 170. CHARITABLE, ETC., CONTRIBUTIONS AND GIFTS. (a) Allowance of Deduction.-- (1) General rule.--There shall be allowed as a deduction any charitable contribution (as defined in subsection (c)) payment of which is made within the taxable year. A charitable contribution shall be allowable as a deduction only if verified under regulations prescribed by the Secretary or his delegate. (c) Charitable Contribution Defined.--For purposes of this section, the term "charitable contribution" means a contribution or gift to or for the use of-- (2) A corporation, trust, or community chest, fund, or foundation-- (A) created or organized in the United States or in any possession thereof, or under the law of the United States, any State, the District of Columbia, or any possession of the United States; (B) organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or to foster national or international amateur sports competition (but only if no part of its activities involve the provision of athletic facilities or equipment), or for the prevention of cruelty to children or animals; (C) no part of the net earnings of which inures to the benefit of any private shareholder or individual;↩
3. Sec. 1.501(c)(3)-1(b)(4), Income Tax Regs. provides: Distribution of assets on dissolution. An organization is not organized exclusively for one or more exempt purposes unless its assets are dedicated to an exempt purpose. An organization's assets will be considered dedicated to an exempt purpose, for example, if, upon dissolution, such assets would, by reason of a provision in the organization's articles or by operation of law, be distributed for one or more exempt purposes, or to the Federal government, or to a State or local government, for a public purpose, or would be distributed by a court to another organization to be used in such manner as in the judgment of the court will best accomplish the general purposes for which the dissolved organization was organized. However, an organization does not meet the organizational test if its articles or the law of the State in which it was created provide that its assets would, upon dissolution, be distributed to its members or shareholders. It has been stated that "to the extent that a regulation promulgated under Section 501 is designed to effectuate the common Congressional purpose [of both section 170 and section 501], it may afford some general guidance in the proper interpretation of Section 170." Morey v. Riddell,205 F.Supp. 918, 920 (S.D. Cal. 1962); Calvin K. of Oakknoll v. Commissioner,69 T.C. 770, 773 (1978), affd. 603 F.2d 211↩ (2d Cir. 1979).
4. At one point, petitioner did testify that he "received certain moneys for rent which are entirely acceptable for clergy to receive." He did not disclose what he did with the rest of the money.↩
5. In Riemers v. Commissioner,T.C. Memo. 1981-456, this Court stated: In Universal Life Church, Inc. v. United States,372 F. Supp. 770 (E.D. Cal. 1974), the Universal Life Church, Inc. of Modesto, California was held to be exempt under section 501(c)(3). However, that holding applied only to the individual parent church there in issue; it was not a group exemption * * * Therefore, the Valhalla Universal Life Church is not included in the exemption granted to the Universal Life Church, Inc. of Modesto, California, and its status as an organization to which deductible contributions can be made must be determined separately. [Fn. ref. omitted.] See also Kellman v. Commissioner,T.C. Memo. 1981-615; Brown v. Commissioner,T.C. Memo. 1980-553; United States v. Toy National Bank, an unreported case ( N.D. Iowa 1979, 43 AFTR 2d 79-954, 79-1 USTC par. 9344); Schilberg v. Commissioner,T.C. Memo. 1982-336; Hall v. Commissioner,T.C. Memo. 1982-337↩.