T.C. Summary Opinion 2010-53


UNITED STATES TAX COURT


JEFFREY N. AND PATRICIA A. WILKES, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 4038-08S.              Filed April 22, 2010.


Jeffrey N. and Patricia A. Wilkes, pro se.

David A. Conrad, for respondent.


PARIS, Judge:  This case was heard pursuant to section 7463[1] of the Internal Revenue Code in effect when the petition was filed.  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

_____

[1]Section references are to the Internal Revenue Code of 1986, as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

Respondent determined a deficiency of $6,087 in petitioners' 2005 Federal income tax. This deficiency resulted from respondent's disallowing $25,983 of petitioners' claimed charitable contribution deduction under section 170. The parties filed a stipulation of settled issues in which respondent conceded some of petitioners' contributions. After these concessions[2] the issues for decision are: (1) Whether petitioners' claimed contributions of $3,450 given to needy individuals were deductible charitable contributions under section 170; (2) whether petitioners' claimed contributions totaling $6,000 to Norman Saayman (Mr. Saayman) for missionary work in South Africa on behalf of the Church of Jesus Christ were deductible charitable contributions under section 170; (3) whether petitioners' claimed contributions totaling $12,500 to Ed Smith (Mr. Smith) and Bob Small (Mr. Small) for missionary work performed with local churches in Flint, Michigan, and Raleigh, North Carolina, respectively, were deductible charitable contributions under section 170; and (4) whether respondent's disallowance of part of the charitable contribution deduction violates petitioners' First Amendment rights.

---

[2]Following the concessions the amount of contested contributions is $21,950.

Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioners resided in Colorado at the time they filed the petition.

Petitioners are members of the Church of Jesus Christ. The Church of Jesus Christ has no hierarchical structure, clergy, or formal leadership. Followers of the Church of Jesus Christ believe that Jesus Christ is the only leader of the faith and that members should independently interpret his teachings as expressed in the New Testament without the presence of a temporal leadership between them and Christ. Members worship together and form local churches in their communities. These local churches are autonomous entities that rely on the contributions and labor of their local members to support their religious activities. The religious doctrine of the Church of Jesus Christ prohibits the local churches from accepting contributions directly from any individuals who are not local members. Petitioners were local church members of the Westside Church of Jesus Christ in Golden, Colorado.

In 2005 petitioners made contributions directly to several individuals known as Needy Saints and claimed these amounts as part of the charitable contribution deduction on their 2005 tax return. These Needy Saints are private individuals who sought

financial assistance from petitioners' local church. Church elders would review requests for assistance from private individuals, both members and nonmembers of the local church, and would classify those individuals as Needy Saints if the elders felt the requests demonstrated a need consistent with the principles of the Church of Jesus Christ. Petitioners claimed the following charitable contributions on their 2005 tax return:

| Needy Saint | Contribution Amount |
|---|---|
| Linda Gregory | $1,850 |
| Howard Thompson | 100 |
| Jennifer Clayton | 150 |
| Corelta Hollister | 1,000 |
| Jeanne Batt | 200 |
| Ryan Watson | 50 |
| Jesse Walker | 100 |

Petitioners' total contributions to Needy Saints were $3,450.

Petitioners gave the contributions directly to the Needy Saints. Linda Gregory used petitioners' contributions to provide transportation and other necessities to other needy individuals. Ms. Gregory used her contributions consistent with the teachings of the Church of Jesus Christ. The other Needy Saints generally used the contributions to support their daily lives.

Additionally, in 2005 petitioners gave contributions of $6,000, $6,500, and $6,000 directly to Mr. Smith, Mr. Small, and Mr. Saayman, respectively. Petitioners claimed these

contributions as deductible charitable contributions on their 2005 tax return.  Mr. Smith, Mr. Small, and Mr. Saayman (the Missionaries) were missionaries and evangelists for the Church of Jesus Christ.  In 2005 the three men worked to establish and develop new local churches.  Mr. Smith developed a local church in Flint, Michigan.  Mr. Small developed a local church in Raleigh, North Carolina.  Mr. Saayman developed a local church in South Africa.  The Missionaries determined how best to use those funds towards the development of their respective local churches.  The Missionaries used these funds to support the recruitment of new members, to purchase and provide religious education materials, and to provide for the basic financial support of the Missionaries.  Each of the Missionaries provided reports to both his local church and petitioners.  These reports detailed the use of their contributions for their missionary work.

Respondent issued a notice of deficiency on November 27, 2007, denying the deduction of the $21,950 in charitable contributions described above.

## Discussion

Section 170 allows taxpayers who itemize their deductions to claim a deduction for any charitable gift or contribution made in compliance with the statute.  Deductions are a matter of legislative grace, and petitioners bear the burden of proving their entitlement to their claimed deductions.  See Rule 142(a);

Welch v. Helvering, 290 U.S. 111, 115 (1933). Petitioners claim a deduction for two kinds of transactions. The first kind is contributions given directly to individuals, whom petitioners call Needy Saints, for the financial support of those individuals. The second kind consists of contributions to missionaries for their financial support while promoting petitioners' religious faith. Additionally, petitioners argue that respondent's disallowance of part of their deduction violates their First Amendment rights.

I. Contributions to Needy Saints

Petitioners' contributions to Needy Saints are not charitable contributions deductible under section 170. Section 170, in relevant part, allows taxpayers to deduct "a contribution or gift to or for the use of * * * a corporation, trust, or community chest, fund, or foundation * * * created or organized in the United States * * * organized and operated exclusively for religious [or] charitable * * * purposes * * * no part of the net earning of which inures to the benefit of any private * * * individual". Sec. 170(c)(2). Moneys given directly to individuals for their personal benefit are deemed private gifts and are not deductible charitable contributions under section 170 because they are not given to or for the use of a charitable organization. See, e.g., Thomason v. Commissioner, 2 T.C. 441, 443 (1943); Dohrmann v. Commissioner, 18 B.T.A. 66 (1929).

Petitioners' contributions to Needy Saints were given directly to the needy individuals for their personal use.  Although the recipients were morally obligated to use the funds in accordance with religious teachings, no organization or entity besides the individuals was the beneficiary of the gift.  Therefore, petitioners are not entitled to a $3,450 charitable contribution deduction for contributions given to the Needy Saints.

II. Contributions to Missionaries

Petitioners also claim a deduction for donations to three missionaries of the Church of Jesus Christ.  To sustain these deductions petitioners must prove the existence of a donee that (1) is created or organized in the United States; and (2) is organized and operated exclusively for religious purposes; (3) no part of the net earnings of which inures to the benefit of any individual; and (4) which is not disqualified for tax exemption under section 501(c)(3).  Sec. 170(c)(2).  Petitioners must then prove that the disputed contributions were given either (1) "for the use of" or (2) "to" the specified organization.  See sec. 170(c).  Petitioners argued that either the Church of Jesus Christ as a practicing religion qualified as a valid donee for section 170 or the individual local churches were valid donees. For the reasons discussed below, this Court finds that the Church of Jesus Christ cannot be a valid donee, but the individual local churches may.

First, this Court must identify a qualified donee who stood in receipt of petitioners' contributions. Petitioners incorrectly argue that the Church of Jesus Christ constitutes a qualified donee for the receipt of charitable contributions. Section 170 requires that the donee be "organized" both in or under the laws of the United States and for a specific allowable purpose. Petitioners do not provide any evidence that the followers of the Church of Jesus Christ are organized as an entity. Additionally, petitioners explicitly state that their beliefs forbid the creation of a hierarchical organization outside the local church. The mere presence of religious faith does not create an organized entity. Therefore, the Church of Jesus Christ is not a valid donee for charitable contributions under section 170.

However, even without an organization the local churches affiliated with the followers of the Church of Jesus Christ do qualify as donees under section 170. Respondent allowed petitioners' deductions for contributions to the Westside Church of Golden, Colorado, and thus confirmed the validity of the local church in Golden, Colorado, as a valid donee within the meaning of section 170(c). Additionally, the record demonstrates and respondent does not deny that the local churches in Flint, Michigan, and Raleigh, North Carolina, are organized in the United States and organized and operated exclusively for

religious purposes.  Because respondent does not distinguish these organizations from the Westside Church, the Court sees no reason to question their qualification as proper donees under section 170(c).

However, petitioners failed to demonstrate that the local church in South Africa, at which Mr. Saayman was a missionary, was organized either in the United States or under the laws of the United States.  Sec. 170(c)(2)(A).  Therefore, contributions made to or for the use of the local church in South Africa are not deductible.

Having determined that the local churches in Flint, Michigan, and Raleigh, North Carolina, are qualified donees within the meaning of section 170(c), this Court must now determine whether the contributions given to Mr. Smith or Mr. Small were made "for the use of" or "to" either of those qualified donees.

Petitioners' contributions to the missionaries are not made "for the use of" any qualified donee.  The Supreme Court has defined the section 170 phrase "for the use of" to mean that the contribution must be "held in a legally enforceable trust for the qualified organization or in a similar legal arrangement."  Davis v. United States, 495 U.S. 472, 485 (1990).  Such legal arrangements must provide the donee a legally enforceable right against the recipient that ensures the donated funds are used on

behalf of the donee.  Id. at 483.  Petitioners' funds were given directly to Mr. Smith and Mr. Small for the purpose of supporting the missionary and evangelical work performed at the local churches.  Petitioners made no effort to establish a legally enforceable trust, nor did they succeed in creating a similar legal arrangement.  Petitioners argue that Mr. Smith and Mr. Small were obligated under the tenets of their religious faith to use the funds for the benefit of the local churches.  However, a moral obligation is not a legally enforceable right.  Additionally, petitioners claim that their donation created contractual obligations by Mr. Smith and Mr. Small to use the funds as directed.  However, petitioners failed to demonstrate that oral contracts between themselves and Mr. Smith and Mr. Small could create a legally enforceable right in the local churches to secure access to the funds.  Therefore, petitioners' contributions were not given "for the use of" a qualified donee.

Although the contributions were not given "for the use of" a qualified donee, the contributions could be deductible if petitioners gave the contributions "to" a qualified donee.  Contributions "to" an organization under section 170 can include contributions given to an agent of the organization.[3]  See, e.g.,

---

[3]Davis v. United States, 495 U.S. 472, 488-489 (1990), acknowledges the existence of the agency exception and declines to address the exception because the taxpayers did not raise the issue before the Court of Appeals.  See also Leavitt, "When Is a
(continued...)

<u>Skripak v. Commissioner</u>, 84 T.C. 285, 318 (1985); <u>Guest v.</u>
<u>Commissioner</u>, 77 T.C. 9, 16 (1981); Rev. Rul. 57-487, 1957-2 C.B.
157. Agency is a fiduciary relationship that arises when an
agent acts on behalf of and under the control of a principal. 1
Restatement, Agency 3d, sec. 1.01 (2006). Additionally, both the
principal and the agent must manifest consent to the
relationship. <u>Id.</u> The analysis of agency has two substantive
components: (1) The relationship between the principal and the
agent and (2) the interaction of the agent with third parties on
the principal's behalf. <u>Id.</u> cmt. c.

First, Mr. Smith and Mr. Small had appropriately established
an agency relationship with their respective local churches in
Flint, Michigan, and Raleigh, North Carolina. Religious doctrine
forbids the local churches from accepting funds directly from
nonmembers. Thus the local churches designated Mr. Smith and Mr.
Small as their agents to solicit, collect, and disburse funds on
their behalf. Additionally, the local churches gave Mr. Smith
and Mr. Small authority to represent the local churches in
interactions with the general public in order to facilitate
recruitment of additional members. Through the granting of this
authority the local churches manifested their assents to Mr.

---

³(...continued)
Gift to the Minister Not a Gift to the Church?--The Impact of
<u>Davis v. United States</u> on Charitable Giving", 66 Tul. L. Rev. 245
(1991).

Smith's and Mr. Small's service as agents.  Additionally, the local churches required Mr. Smith and Mr. Small to provide regular financial reports to their respective local churches.  To ensure Mr. Smith and Mr. Small complied with the teaching of the Church of Jesus Christ, the elders of the local churches monitored the distributions of funds and Mr. Smith's and Mr. Small's interactions with the public.  If at any time Mr. Smith or Mr. Small had acted contrary to the wishes of the local churches, the local churches held the authority to terminate the relationship and dismiss either of them as an agent.  Therefore, Mr. Smith and Mr. Small established a proper agency relationship with their respective local churches.

Second, Mr. Smith and Mr. Small interacted with petitioners and other third parties on behalf of their local churches.  They provided religious instruction to both members and nonmembers of the local churches.  They used this instruction of nonmembers as an opportunity to recruit new members to the local churches. They also purchased radio and newspaper advertisements on behalf of their local churches.  Mr. Smith and Mr. Small solicited and received funds from nonmembers (including petitioners) for their local churches.  They used these funds to purchase religious instructional materials and advertisements and to provide for their own modest living expenses.  See Morey v. Riddell, 205 F. Supp. 918, 921 (S.D. Cal. 1962) (holding that the donations given

to four ministers who were agents of the religious organization were valid contributions even though a portion of the funds was used to cover the ministers' living expenses).  All of these interactions with third parties were performed under the authority of the agency relationship between the men and their local churches.

Finally, because Mr. Smith and Mr. Small were agents of their respective local churches (qualified donees) and petitioners' contributions were given to them in this capacity, petitioners' contributions were given "to" a qualified donee within the requirements of section 170.  Therefore, petitioners are entitled to deduct under section 170 the $6,000 contribution to Mr. Smith and the $6,500 contribution to Mr. Small claimed on their 2005 tax return.

III. Constitutional Claims

Petitioners claim that respondent's denial of part of their charitable contribution deduction is an infringement of their constitutional rights.  Petitioners' religious beliefs do not allow for the existence of a manmade hierarchical structure that governs their religious practice.  They believe that all followers of the Church of Jesus Christ worship directly under the guidance of Jesus Christ and that the creation of any intermediary organization is against their religious teachings. They argue that this belief causes respondent to treat them

differently from other religious organizations in the United States with respect to the application of charitable contributions.  Petitioners conclude that this discriminatory effect provides grounds to assert a violation of their rights under the First Amendment to the Constitution.

The Supreme Court has held that section 170 does not violate the First Amendment to the Constitution and provided the framework for future questions on this issue.  Hernandez v. Commissioner, 490 U.S. 680 (1989).  First, the Supreme Court states that section 170 does not violate the Establishment Clause.  Id. at 695.  Section 170 makes no distinctions among different religious entities.  Id.  The primary effect of section 170 "is neither to advance nor inhibit religion."  Id. at 696.  Even if the statute creates a disparate burden on certain religious organizations, "a statute primarily having a secular effect does not violate the Establishment Clause merely because it 'happens to coincide or harmonize with the tenets of some or all religions.'"  Id. (quoting McGowan v. Maryland, 366 U.S. 420, 442 (1961)).  Additionally, section 170 "threatens no excessive entanglement between church and state."  Id. at 696.

Second, the Court sets forth the test for a free exercise inquiry.  The test is whether "government has placed a substantial burden on the observation of a central religious belief or practice, and, if so, whether a compelling governmental

interest justifies the burden." Id. at 699. In Hernandez, the taxpayer was neither prevented from practicing his religion nor forced to violate any of his religious beliefs. The only identifiable burden in the case entailed the loss of funds from the denied deduction that the taxpayer could use to finance additional religious services. Id. This burden was "no different from that imposed by any public tax or fee" and was insufficient to meet the substantial burden requirement. Id. Additionally, the Government had an interest in maintaining a uniform tax system without myriad exceptions for each religious faith. This interest was sufficiently compelling to overcome any identifiable burden that the taxpayer raised. Id.

Petitioners have failed to distinguish their case from Hernandez. They provide no justifiable reason to conclude section 170 now violates the Establishment Clause. Additionally, petitioners acknowledge that the Government has not prevented them from performing acts of charity or from practicing their religion. They bear only the burden of a denied deduction. Petitioners acknowledge their religious beliefs do not prevent them from complying with the tax law. Mr. Wilkes stated that documenting compliance with the tax law is one of his responsibilities for the Westside Church. Petitioners could have structured their contributions to needy individuals and foreign missionaries through the Westside Church to achieve compliance

with section 170 in various ways.  Neither the burden of complying with the tax law nor the burden of increased taxes due to denied deductions rises to the level of a substantial burden necessary to invoke a violation of the Free Exercise Clause of the First Amendment to the Constitution.

Conclusion

Petitioners' donations to needy individuals are private gifts and are not deductible as charitable contributions.  Also, petitioners' contributions to Mr. Saayman for missionary work in South Africa are not deductible as charitable contributions because petitioners directed the contributions to an organization formed outside the United States.  However, petitioners' contributions to Mr. Smith and Mr. Small are deductible as charitable contributions because petitioners gave the contributions to authorized agents of a charitable organization and met the requirements of section 170.

To reflect the foregoing and the concessions of the parties,

Decision will be entered

under Rule 155.