GEORGE N. BAUSTERT, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Baustert v. Commissioner
Docket Nos. 4467-83; 33868-84.
United States Tax Court
T.C. Memo 1987-488; 1987 Tax Ct. Memo LEXIS 484; 54 T.C.M. (CCH) 673; T.C.M. (RIA) 87488; September 28, 1987. Joseph Falcone, for the petitioner. Timothy S. Murphy, for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner determined deficiencies in petitioner's Federal income taxes and additions to tax under section 6653(a)(1)[1] and (2) as follows: Taxable
Additions to Tax
Docket No.
Year
Deficiency
Sec. 6653(a)(1)
Sec. 6653(a)(2)
4467-83
1978
$ 5,133.00
$ 257.00
--
1979
6,774.00
339.00
--
1980
7,542.00
377.00
--
33868-84
1981
8,415.00
420.75
*
1982
7,448.00
372.40 **
*488 These cases were consolidated for trial, briefing, and opinion. After concessions, the issues for decision are: (1) whether petitioner is entitled to a charitable contribution deduction for amounts allegedly contributed to the Ecclesiastical Order of the Ism of Am, Inc. for the taxable year 1982; (2) whether petitioner is liable for the additions to tax under section 6653(a)(1) and (2) for the taxable years 1978, 1979, 1980, 1981, and 1982; and (3) whether damages under section 6673 should be awarded. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and accompanying exhibits are incorporated by this reference. Petitioner, George N. Baustert, resided in Madison Heights, Michigan, at the times he filed his petitions in this case. He filed his Federal income tax returns for the taxable years 1978 through 1982 with *489 the Internal Revenue Service Center in Cincinnati, Ohio. During the taxable years in issue, petitioner was employed as an engineer by Ford Motor Company. For the taxable year 1982, petitioner received wages of $ 40,166 and his net pay was $ 30,936. Petitioner is the founder of the Ecclesiastical Order of the Ism of Am, Inc. (Ism of Am). The Ism of Am was incorporated in Michigan in 1978. The Articles of Incorporation which were filed on August 23, 1978, made no provision for the distribution of the assets of the Ism of Am to a qualifying charity upon dissolution. The Articles of Incorporation were subsequently amended on October 28, 1980, to provide that upon dissolution of the Ism of Am, its assets would be distributed exclusively to organizations exempt under section 501(c). The headquarters of the Ism of Am were located at the residence of petitioner, 30205 Longfellow, Madison Heights, Michigan. The residence was owned by Janette Schwedt, who also lived there. Janette was the secretary and treasurer of the Ism of Am. On January 15, 1980, the Ism of Am filed an application for recognition of exemption from Federal income taxes, seeking exemption under section 501(c)(3) *490 and claiming to be a church within the meaning of sections 509(a)(1) and 170(b)(1)(A)(i). On February 18, 1981, the Commissioner issued a final adverse ruling denying the exempt status of the Ism of Am under section 501(c)(3). The Ism of Am then timely filed a petition in this Court for declaratory judgment under section 7428. We held that the Ism of Am was not entitled to exemption from Federal taxation under sections 501(a) and 501(c)(3) because it was not operated exclusively for exempt purposes. The substantial nonexempt purpose of the Ism of Am consisted of counseling individuals on the purported tax benefits available to ministers of the Ism of Am under the Internal Revenue Code. The tax information and advice so permeated the literature that we could not help but conclude that although the Ism of Am may well have advocated belief in the God of Am, it also advocated belief in the God of Tax Avoidance. Ecclesiastical Order of Ism of Am v. Commissioner,80 T.C. 833, 839-840 (1983), affd. without published opinion 740 F.2d 967 (6th Cir. 1984), cert. denied 471 U.S. 1015 (1985). During 1982, the Ism of Am had 12 to 15 meetings *491 which varied in size from 6 to 12 people. At the meetings, the members discussed problems of the day. Petitioner continued to distribute literature of the Ism of Am, but did not distribute tax literature. No new members were accepted and petitioner told people that the Ism of Am was on hold until he could get the church status of the Ism of Am clarified. During 1982, a checking account, a savings account, and an investment account at Merrill Lynch in the name of the Ism of Am were maintained. Petitioner and Janette had sole signatory authority on the accounts. Petitioner did not maintain a bank account in his own name. During 1982, a total of $ 62,753 was deposited into the checking account of the Ism of Am. Of this amount, petitioner deposited $ 31,849, Janette deposited $ 10,191, and $ 4,000 was transferred from the Merrill Lynch account in November and December. Transfers from the savings account and other unidentified deposits accounted for the remainder. After depositing $ 31,849, petitioner had no other assets with which to pay personal expenses. The corporate minutes of the Ism of Am, dated March 15, 1979, provide as follows: Now comes the time for the opening *492 of bank accounts in the name of The Ecclesiastical Order of The Ism of AM, so as to reinforce the corporate image thereof. In so doing, it is proposed that the Ministers shall deposit their savings into the Order bank accounts, such moneys to be considered part donation and part loan to the Order, the amount of each to be determined at year end as besed [sic] upon the amount of allowable tax deductions to be claimed at that time. [2] The loan portion to the Order shall be interest free, and repayment to the Ministers shall be as their needs require. All such repayment shall be considered a discharge of debt, since this loan portion is not to be claimed as a deductible donation. *493 During 1982, the funds in the checking account of the Ism of Am were used in the following manner: Transfer to the savings account or
Merrill Lynch account
$ 17,650
Legal
13,409
Food
1,121
Utilities
2,244
Mortgage
2,964
Automobile
2,373
Cable TV
222
Charge Cards
13,313
Arthur Murray Dance
3,000
Other
3,479
Total
$ 59,775
There was also a $ 20,160 withdrawal from the Merrill Lynch account during February 1982. On his Federal income tax returns, petitioner claimed charitable contribution deductions for contributions to the Ism of Am in the amounts of $ 10,000, $ 17,605, $ 18,567, $ 20,209 and $ 19,797 for the taxable years 1978, 1979, 1980, 1981, and 1982, respectively. In the statutory notices of deficiency, the Commissioner disallowed the deductions and determined that petitioner was liable for the additions to tax under section 6653(a)(1) and (2). [3] Although petitioner concedes that he is not entitled to charitable contribution deductions for contributions to the Ism of the Am for the taxable years 1978 through 1981, he contends that he is entitled to a charitable contribution deduction for contributions to the Ism of Am for the *494 taxable year 1982 and that he is not liable for the additions to tax under section 6653(a)(1) and (2) for the taxable years 1978 through 1982. OPINION Section 170(a) allows as a deduction any charitable contribution (as defined in section 170(c)) that is made during the taxable year. Section 170(c) defines a charitable contribution as a contribution or gift to or for the use of a corporation, trust, or community chest, fund or foundation which is organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, provided that none of the net earnings inures to the benefit of any private individual. Sec. 170(c)(2). Qualified entities under section 170 are essentially those organizations that qualify for an exemption from tax under section 501(c)(3). Deductions are a matter *495 of legislative grace and taxpayers must satisfy the specific requirements of the deductions they claim. Deputy v. duPont,308 U.S. 488 (1940); New Colonial Ice Co. v. Helvering,292 U.S. 435 (1934). Taxpayers bear the burden of proving their entitlement to the deductions they claim. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). These rules apply with equal force to deductions claimed for charitable contributions. Davis v. Commissioner,81 T.C. 806, 815 (1983), affd. without published opinion 767 F.2d 931 (9th Cir. 1985). To show that payment of the claimed contribution was made during the taxable year, the taxpayer must establish that he relinquished dominion and control over the alleged gift. Wedvik v. Commissioner,87 T.C. 1458, 1465 (1986); Davis v. Commissioner, supra at 817; Stephenson v. Commissioner,79 T.C. 995, 1003 (1982), affd. 748 F.2d 331 (6th Cir. 1984). [4] In the instant case, petitioner had signatory authority *496 over the checking account, savings account, and Merrill Lynch account of the Ism of Am. Consequently, petitioner did not relinquish dominion and control over the funds allegedly contributed, and, therefore, petitioner did not make a contribution. Davis v. Commissioner, supra at 817. Petitioner has also failed to establish that the Ism of Am was operated exclusively for exempt purposes. Sec. 170(c)(2)(B). In our prior opinion we held that the Ism of Am was not entitled to exemption from Federal taxation under sections 501(a) and 501(c)(3) because it was not operated exclusively for exempt purposes. The substantial nonexempt purpose of the Ism of Am consisted of counseling individuals on the purported tax benefits available to ministers of the Ism of Am under the Internal Revenue Code. The tax information and advice so permeated the literature that we could not help but conclude that although the Ism of Am may well have advocated belief in the God of Am, it also advocated belief in the God of Tax Avoidance.
Ecclesiastical Order of Ism of Am v. Commissioner80 T.C. 833, 839-840 (1983), *497 affd. without published opinion 740 F.2d 967 (6th Cir. 1984), cert. denied 471 U.S. 1015 (1985). Petitioner concedes that the Ism of Am was not operated exclusively for exempt purposes for the taxable years 1978 through 1981. However, petitioner contends that during the taxable year 1982, the Ism of Am did not distribute tax literature and, therefore, did not engage in the activity which had previously precluded it from being operated exclusively for exempt purposes. Petitioner then concludes that the Ism of Am was operated exclusively for exempt purposes. The holding of our prior opinion in no way suggests that if the Ism of Am did not distribute the tax literature, it would be operated exclusively for exempt purposes. In reiterating our holding, we stated as follows: Our holding today goes only to those organizations whose entire existence is permeated with the purpose of counseling taxpayers on tax matters. In sum, petitioner is, * * *, nothing more than a commercial tax service, albeit in a narrow range of matters of interest to its members, operating under the cover of a professed religious purpose (which we have accepted as true for the purposes *498 of this case). That religious belief may be the body of the automobile but its engine and the gasoline on which it runs consist of tax information and advice as to methods of tax avoidance, if not downright tax evasion. There is simply no escape from the conclusion that petitioner is operated for a substantial nonexempt purpose. * * *. [Ecclesiastical Order of Ism of Am v. Commissioner, supra at 842-843.]
Petitioner must, therefore, prove that the Ism of Am was operated exclusively for exempt purposes during the taxable year 1982. This he has failed to do. Petitioner testified that the operation of the Ism of Am was very low key during 1982. The Ism of Am had 12 to 15 meetings which varied in size from 6 to 12 people. At the meetings, the members discussed problems of the day. No new members were accepted and petitioner told people that the Ism of Am was on hold until he could get the church status of the Ism of Am clarified. In short, petitioner has failed to establish that the Ism of Am was operated exclusively for exempt purposes. Petitioner has also failed to establish that the net earnings of the Ism of Am did not inure to his benefit. Sec. *499 170(c)(2)(C); Miedaner v. Commissioner,81 T.C. 272 (1983); Stephenson v. Commissioner,79 T.C. at 1003; McGahan v. Commissioner,76 T.C. 468, 482-483 (1981), affd. without published opinion 720 F.2d 664 (3d Cir. 1983). Petitioner contends that he received no personal benefit from the net earnings of the Ism of Am. He argues that although he deposited his salary into the checking account of the Ism of Am, it was with the understanding that the amount spent on his personal needs would be considered a repayment of a loan and the balance would be irrevocably donated to the Ism of Am. He contends that this balance should equal or exceed the amount claimed as a charitable contribution to the Ism of Am on his Federal income tax return. Petitioner, in effect, equates the amount of the claimed charitable contribution with the net earnings of the Ism of Am and concludes that he received no personal benefit from the net earnings of the Ism of Am. However, petitioner did not provide us with an analysis to support his position. An examination of the checking account reveals why. Petitioner deposited $ 31,849 into the checking *500 account of the Ism of Am and claimed a charitable contribution deduction of $ 19,797. Thus, petitioner considered the payment of $ 12,052 of personal expenses as the repayment of a loan. The checking account of the Ism of Am shows disbursements of $ 59,775. Of this amount $ 17,650 was transferred to the saving account or the Merrill Lynch account. Petitioner testified that the food, legal expenses, and one-sixth of the utilities, or $ 14,904 were expenses of the Ism of Am. Assuming the propriety of this allocation, remains $ 27,221 of disbursements from the bank account of the Ism of Am. Even if we assume that a portion of the remaining disbursements were used to repay Janette (or to pay her personal expenses) the $ 10,191 she deposited, there still remains $ 17,030 of disbursements and we can only conclude that these were for personal expenses of petitioner as petitioner has not established otherwise. Therefore, at least $ 4,978 ($ 17,030-$ 12,052) of the personal expenses of petitioner were paid from the allegedly contributed amounts. Accordingly, even under petitioner's theory the net earnings of the Ism of Am inured to his benefit. [5]
*501 Petitioner contends that, in any event, there is no prohibition against a church providing its ministers with some personal living expenses, relying on Morey v. Riddell,205 F. Supp. 918 (S.D. Cal. 1962). Petitioner's reliance is misplaced. In that case, the taxpayers had made contributions to a church which had no distinctive identifying name, no written charter or operational guide other than the Holy Bible, no permanent headquarters, no comprehensive records, and no church designated bank account. The Government conceded that the purposes of the church were exclusively religious, but argued that the church was not an organized association. The court noted that the reason for these characteristics was the very doctrines that bound its members together. The court then reviewed the activities of the church which had been conducted for many years and concluded that while the church lacked some of the indicia of organization, it plainly was an organized association of persons dedicated to religious purpose. Morey v. Riddell, supra at 920. The Government also argued that the contributions to the church inured to the benefit of individuals because *502 the ministers employed a portion of the contributions to pay for their living expenses. The court rejected this argument and concluded that the sums expended by the ministers were in effect their salary. The expenditures were legitimate expenses of the church in implementing its religious purpose. The evidence was clear that the ministers devoted the major portion of their time to the work of the church and that the amount of church funds used to pay their modest living expenses was small in comparison to the extent of their services. Morey v. Riddell, supra at 921. In Morey v. Riddell, supra, the issue of whether there was payment of the claimed contribution during the taxable year, i.e., whether the taxpayers had relinquished dominion and control over the alleged contribution, was not involved. The record in the instant case establishes that petitioner was in control of the funds of the Ism of Am rather than merely being in effect paid a salary by the Ism of Am. Furthermore, respondent has not conceded that the Ism of Am was operated exclusively for religious purposes. With respect to the services provided by petitioner to the Ism of Am, *503 he testified that he kept the books and did the promotion, but that there was not a lot to do. In short, Morey v. Riddell, supra, is distinguishable from the instant case. Based upon the reasons stated above, we conclude that petitioner is not entitled to a charitable contribution deduction for payments made to the Ism of Am for the taxable year 1982. Petitioner next advances a constitutional challenge to section 508(c)(1)(A). Section 508(c)(1)(A) provides that churches, their integrated auxiliaries, and conventions or associations of churches are excepted from the general rule of section 508(a) which provides that organizations described in section 501(c)(3) and organized after October 9, 1969, are required to formally apply for recognition of their tax-exempt status. A contribution to an organization during the period it is not exempt will not qualify for a charitable deduction under section 170. Sec. 508(d)(2)(B); Peek v. Commissioner,73 T.C. 912 (1980). Petitioner contends that as a result of the failure to seek prior approval of the Commissioner *504 that the Ism of Am was a section 501(c)(3) organization for the taxable year 1982, the alleged contributions are not deductible under section 170 unless the Ism of Am qualifies as a church under section 508(c)(1)(A). Petitioner contends that to require the Ism of Am to apply to the Commissioner for tax-exempt status or practice its religion as a church in order for his alleged contributions to be deductible under section 170 is in violation of the establishment clause and the free exercise clause of the First Amendment. In light of our conclusion that petitioner did not relinquish dominion and control over the funds allegedly contributed, and, therefore, did not make a contribution we need not address this issue. [6]
*505 The next issue for decision is whether petitioner is liable for the additions to tax pursuant to section 6653(a)(1) and (2). Section 6653(a)(1) and (2) provides for the imposition of additions to tax when there is an underpayment of tax due to negligence or intentional disregard of rules or regulations. Petitioner bears the burden of proving that the determination of the additions to tax is erroneous. Bixby v. Commissioner,58 T.C. 757, 791-792 (1972). Ultimately, the question is factual, and must be decided by the Court based upon a consideration of all the facts and circumstances. Petitioner contends that the facts that he patterned the Ism of Am after the Universal Life Church which during the taxable years in issue had been granted a section 501(c)(3) exemption by the Commissioner, indicates that he was not negligent. Petitioner contends that if an organization patterns its operations after an organization that has been granted tax-exempt status, it would be granted tax-exempt status. Petitioner also contends that his situation is similar to Andrews v. Commissioner,T.C. Memo. 1985-380. *506 We disagree. In Andrews v. Commissioner, supra, the taxpayers established a family trust and attempted to shift their tax burden to the trust. The Commissioner determined that the income of the trust was properly taxable to the taxpayers and also determined that the taxpayers were liable for the additions to tax under section 6653(a). The taxpayers conceded the issue of the validity of the family trust for income tax purposes. Therefore, the only issue before the Court was whether the taxpayers were liable for the additions to tax. We held that the taxpayers were not liable for the additions to tax for three reasons. First, the taxpayers were ranchers with no apparent training or sophistication in tax matters. Second, the taxpayers consulted an attorney and a certified public accountant prepared their return for one of the taxable years in issue. Third, the law concerning family trusts was undeveloped at the time the taxpayers filed their returns. In the instant case, petitioner contends that he had no training or sophistication in tax matters. We are "underwhelmed" by this contention. Petitioner argues that he had no training or sophistication in tax *507 matters yet tax information and advice concerning the purported tax benefits available to ministers of the Ism of Am permeated the literature of the Ism of Am. Furthermore, he did not consult an attorney or accountant with expertise in tax matters. Petitioner next contends that during the taxable years in issue there were no cases dealing with the tax-exempt status of a church which disseminated tax information and that as in Andrews v. Commissioner, supra, the law was not developed at the time petitioner filed his Federal income tax returns for the taxable years in issue. We are not persuaded. During the taxable years in issue, there was authority which would have disallowed charitable contribution deductions for payments made to the Ism of Am. The Articles of Incorporation of the Ism of Am were filed on August 23, 1978, and made no provision for distribution of the assets of the Ism of Am to a qualifying charity upon dissolution. In Calvin K. of Oakknoll v. Commissioner,69 T.C. 770 (1978), affd. without published opinion 603 F.2d 211 (2d Cir. 1979), which was filed February 28, 1978, the taxpayers formed a religious organization *508 and claimed deductions for contributions made to it. We relied upon section 1.503(c)(3)-1(b)(4), Income Tax Regs., and disallowed the deductions because the taxpayers had done nothing to irrevocably commit the disposition of the assets to another qualifying charity if the religious organization were to dissolve. Calvin K. of Oakknoll v. Commissioner, supra at 773. Therefore, when the Ism of Am was formed there was authority which would have disallowed charitable contribution deductions for payments made to it. The Articles of Incorporation were subsequently amended on October 28, 1980, to provide that upon dissolution of the Ism of Am, its assets would be distributed exclusively to organizations exempt under section 501(c). By this time, however, we had on two occasions dealt with the deductibility by an individual of charitable contributions to a "church" established by the individual where the individual also controlled the bank account of the "church." In both instances we denied the deduction. [7] Therefore, when the Ism of Am amended its Articles of Incorporation there was authority which would have disallowed charitable contribution *509 deductions for the payments made by petitioner to the Ism of Am. Accordingly, Andrews v. Commissioner, supra, is distinguishable and petitioner's reliance upon it is misplaced.
In addition, with respect to the taxable year 1978, petitioner testified that a portion of the deduction claimed for a charitable contribution to the Ism of Am was attributable to amounts contributed by Janette. Petitioner also failed to introduce evidence that this was not the case in the taxable years 1979 through 1981. Petitioner testified that he was aware that no part of the funds of the Ism of Am could inure to his benefit. However, we have concluded above that a portion of the amount claimed as a charitable contribution to the Ism of Am for the taxable year 1982 was used to pay personal expenses of petitioner. Petitioner has failed to persuade us that the imposition of the additions to tax under section 6653(a)(1) and (2) *510 was unwarranted, and, therefore, petitioner is liable for such additions. The next issue for decision is whether damages under section 6673 should be awarded. Section 6673 provides that this Court shall award damages to the United States not in excess of $ 5,000 where it appears to the Court that the proceedings have been instituted or maintained by the taxpayer primarily for delay or that the taxpayer's position is frivolous or groundless. Respondent made a motion that the Court award damages under section 6673 at the conclusion of the trial. We took the motion under advisement. We granted petitioner's request to respond to the issue in his brief. However, neither petitioner nor respondent addressed the issue in their brief. A review of the record shows that such an award of damages is clearly justified. This Court has been faced with numerous cases, such as this one, with factual situations not significantly different, involving attempts by taxpayers to use the "pretext of a church to avoid paying their fair share of taxes, * * * [and to] resort to the courts in a shameless attempt *511 to vindicate themselves." Miedaner v. Commissioner,81 T.C. 272, 282 (1983). Such cases have uniformly been held by this Court to be entirely without merit, and by now, the continued assertion of these frivolous and meritless claims can no longer be considered to be serious efforts by bona fide taxpayers to vindicate a legitimate position. They are, in short, frivolous. See Kalgaard v. Commissioner,764 F.2d 1322 (9th Cir. 1985), affg. a Memorandum Opinion of this Court; Hall v. Commissioner,729 F.2d 632 (9th Cir. 1984), affg. a Memorandum Opinion of this Court; Davis v. Commissioner,81 T.C. 806 (1983), affd. without published opinion 767 F.2d 931 (9th Cir. 1985). [8]
On this record, we conclude that petitioner's position was without merit. We realize that petitioner conceded that he was not entitled to charitable contribution deductions for payments made to the Ism of Am for the taxable years 1978 through 1981. Nonetheless, petitioner litigated this issue for the taxable year 1982, despite overwhelming contrary *512 authority. This indicates that the proceeding was maintained primarily for delay. We accordingly award damages to the United States under section 6673 in the amount of $ 5,000. Decision will be entered under Rule 155 in docket No. 4467-83.
Decision will be entered for the respondent in docket No. 33868-84.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect for the relevant years, and all Rule references are to the Rules of Practice and Procedure of the Court. ↩
*. 50% of the interest due on $ 8,415.00 ** 50% of the interest due on $ 7,448.00 ↩
2. Generally, an individual's charitable contribution deduction for a given year is limited to 50 percent of his adjusted gross income. See sec. 170(d)↩. For the taxable years 1981 and 1982 petitioner's charitable contribution deductions equalled 50 percent of his adjusted gross income and for the taxable years 1979 and 1980 his charitable contribution deductions exceeded 50 percent of his adjusted gross income. 3. The Commissioner also disallowed deductions for charitable contributions to other charities in the amounts of $ 290 and $ 252 for the taxable years 1978 and 1980, respectively. ↩
4. See Odd v. Commissioner,T.C. Memo. 1984-180↩. 5. We have not taken into account the personal expenses, if any, which were paid from the savings account or the Merrill Lynch account. We point out that there was a $ 20,160 withdrawal from the Merrill Lynch account during February 1982, with no explanation as to the application of the funds. ↩
6. See Pusch v. Commissioner,T.C. Memo. 1980-4, affd. without published opinion 628 F.2d 1353 (5th Cir. 1980), cert. denied 450 U.S. 930 (1981), where we held that the allowance of charitable contribution deductions for contributions to churches as defined in section 170(c)(2) and the regulations issued pursuant thereto did not violate the First Amendment. See also Pusch v. Commissioner,T.C. Memo. 1982-492, affd. without published opinion 706 F.2d 313↩ (5th Cir. 1983). 7. See Pusch v. Commissioner,T.C. Memo. 1980-4, affd. without published opinion 628 F.2d 1353 (5th Cir. 1980), cert. denied 450 U.S. 930 (1981); Abney v. Commissioner,T.C. Memo. 1980-27↩. 8. See also Elliott v. Commissioner,T.C. Memo. 1985-493↩.